**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **ARTHUR EARL CLARK and** ) | |
| **BARBARA E. CLARK** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NUMBER** |
| ) | **1:05-CV-00747-MHT-VPM** |
| **AMSOUTH MORTGAGE CO., INC.;** ) | |
| **DOVENMUEHLE MORTGAGE, INC.;** ) | |
| **GEOTRAC INFORMATION SYSTEM** ) | |
| **SPECIALIST, and EMPIRE FIRE AND** ) | |
| **MARINE INSURANCE COMPANY,** ) | |
| ) | |
| **Defendants.** ) | |

**MOTION FOR SUMMARY JUDGMENT OF DEFENDANT GEOTRAC
INFORMATION SYSTEM SPECIALIST**

COMES NOW Defendant Geotrac Information System Specialist (hereinafter referred to as "Geotrac") and pursuant to Rule 56 of the *Federal Rules of Civil Procedure* hereby moves this Court for full and final summary judgment on allegations of the Plaintiffs' Complaint. There are no genuine issues of material fact, and Defendant is entitled to a judgment as a matter of law. This Motion is based on the pleadings to date, the deposition testimony of Plaintiff Arthur Earl Clark, the Service Agreement between Geotrac and Dovenmuehle Mortgage, and the Affidavit of Mark Schnellinger.

**NARRATIVE STATEMENT OF UNDISPUTED FACTS**

This case arises out of the forced placement of flood insurance on the Clarks' property on or about August 13, 2003. (See Complaint ¶ 1). At the time of this forced placement, the

Clarks lived at 8530 South County Road 55, Cottonwood, Alabama 36320. On or about August 24, 1988, the Clarks executed and delivered to American Federal Savings Bank of Duval County a promissory note secured by a mortgage on their home located at this address. (See Complaint ¶ 10). The mortgage on said property was subsequently transferred and/or sold to AmSouth Mortgage Company and/or Dovenmuehle Mortgage, Inc. *Id.* at ¶ 11.

Subsequent to obtaining said mortgage, Defendant Dovenmuehle entered into a Service Agreement with Defendant Geotrac, a flood zone determination provider to prepare a FEMA Standard Flood Zone Determination. (See Service Agreement, Exhibit "A"). There has never been a contractual relationship between Geotrac and Plaintiffs. (See Deposition of Arthur Earl Clark at page 285). The contract in question allowed Geotrac to make a determination as to whether or not property was located in a flood zone by referencing current FEMA maps. (See Service Agreement, attached hereto as Exhibit "A" and Affidavit of Mark Schnellinger, attached hereto as Exhibit "B"). The current FEMA map when compared to the Houston County tax maps did in fact show that a structure located on the Plaintiff's property was in a flood zone. (See Deposition of Arthur Earl Clark at page 276, 287 and Affidavit of Mark Schnellinger, attached hereto as Exhibit "B").

As a result of a structure being located in a flood zone, AmSouth/Dovenmuehle required the Plaintiffs to purchase flood insurance. However, the Plaintiffs disputed the necessity of flood insurance and refused. (See Plaintiff's Complaint). As such, on or about August 13, 2003, AmSouth and/or Dovenmuehle purchased flood insurance for the Clark

property, passing on the cost of said insurance to Mr. and Mrs. Clark.  (See Plaintiffs' Complaint at page 17).

Upon learning that Geotrac provided the flood zone determine for Dovenmuehle and/or AmSouth, Mr. Clark contacted Geotrac to determine why his property had been listed as being in a flood zone.  Upon speaking to Geotrac, Mr. Clark immediately recognized that the FEMA and Houston County maps were in error.  As such, he advised Geotrac of the errors in the mapping, and the flood zone determination was immediately corrected.  (See Deposition of Arthur Earl Clark at pages 185 to 186, 263, 280 - 283).  Once Geotract issued the corrected determination, AmSouth removed the necessity of flood insurance from the subject property.  (See Complaint at paragraph 24).  As a result of the errors on the FEMA map, Mr. and Mrs. Clark have now sued Geotrac and others.  As against Geotrac, the Clarks have alleged negligence, fraud, breach of contract, conversion, and unjust enrichment.  For the reasons presented below, Geotrac is entitled to full and final summary judgment on all allegations of the Plaintiff's Complaint.

### STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  Rule 56(c), F.R.Civ.P.  The Court's function in deciding a motion for summary judgment is to determine whether genuine material issues of fact exist, and, if not, whether the movant is entitled to judgment as a matter of law.  Stanton v. National R.R. Passenger Corp., 849 F.Supp 1524 (M.D.Ala. 1994).

A District Court must grant summary judgment if this showing is made by the moving party. Real Estate Financing v. Resolution Trust Corp., 950 F.2d 1540 (11th Cir. 1992). Once the moving party has demonstrated the absence of genuine issue of material fact or that an essential element of the non-movant's case is lacking, the burden shifts to the non-movant to show the existence of a genuine issue of material fact or sufficient proof to establish the existence of that essential element. *Id.,* Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, (11th Cir. 1994) (*opinion modified on rehearing,* 30 F.3d 1347). A factual dispute is "genuine" only when the evidence is such that a reasonable jury could return a verdict on the issue in favor of the non-moving party. Marine Coatings of Alabama, Inc. *v. U.S.*, 932 F.2d 1370 (11th Cir. 1991).

## ARGUMENT

**I.    THIRD PARTY FLOOD DETERMINATION COMPANIES ARE PROTECTED FROM LIABILITY UNDER THE NATIONAL FLOOD INSURANCE ACT.**

Geotrac Information System Specialist offers the service of providing flood zone determinations for lending institutions in compliance with the National Flood Insurance Act of 1968 (the "Act") and its progeny. The Act requires flood insurance for improved real estate located within federally recognized flood zones. *See* 42 U.S.C. § 4104(a), *et seq.*

As stated above, there is no contractual relationship between the Plaintiffs and Defendant Geotrac. The Act which governs the behavior of the parties in this case does not create an express or implied cause of action against lenders or against those working on

behalf of lenders who err in making flood zone determinations or otherwise violate the terms of the Act. *See e.g., Mid-America Nat'l Bank v. First Sav. & Loan Ass'n*, 737 F.2d 638, 642-643 (7th Cir. 1984).

Each of the Plaintiffs' claims in this case are premised upon the theory that Geotrac breached a duty imposed on it by 42 U.S.C. § 4104. However, in order to assert such claims, the Clarks must be able to demonstrate that Geotrac owed a legal duty to them under the Act. Though Alabama courts have not explicitly addressed the issue, several courts in other jurisdictions have had the opportunity to examine the Act and its consequences and have uniformly refused to recognize private claims either under the Act itself, or under common law theories such as put forth by the Plaintiffs in this case.

In *Cruey v. First American Flood Data Services, Inc.*, the United States District Court for the Eastern District of Kentucky had the opportunity to examine this issue in detail. 174 F.Supp.2d 525 (E.D. Ky. 2001). In that case, the Crueys sued defendant First American Flood Data Services alleging that they had performed an incorrect flood zone determination, and that the plaintiffs entered into a business loan agreement to develop the property at issue only on the basis of that determination. *Id.*

In upholding summary judgment in favor of First American Flood Data Services, the district court stated:

> Does there exist an implied right of action under 42 U.S.C. § 4104(b) in favor of borrowers as against third party special flood hazard determinants? The appropriate standard by which to discern the answer is that enunciated in *Cort v. Ash*, 422 U.S. 66

>(1975), application of which leads inescapably to the conclusion that ***no such implied right exists***...Because plaintiffs assert a cause of action that does not exist, however, ***the case may be dismissed on the pleadings.***

*Id.* at 532 (emphasis supplied). This case is directly on point and demands the conclusion that the Clarks' claims must fail. The Act expressly forbids actions of this nature against lenders, which leads to the obvious and inevitable conclusion that actions against third-parties who work on behalf of lenders are forbidden under federal law as well.

In granting summary judgment in favor of First American Flood Data Services, the court paid particular interest to 42 U.S.C. § 4104(B)(e). The court noted that this subsection authorizes lenders such as AmSouth and Dovenmuehle Mortgage to rely on flood zone determinations provided by third parties, such as Geotrac. It further shields the mortgage companies from liability for any error made by such flood zone determination companies. The *Cruey* court noted that "[i]n substance, this amounts to an *express denial* of a cause of action by the borrower as against the lender, at least with respect to actions predicated on special flood hazard determinations made by third persons...." *Id.* at 529 (emphasis in original). The *Cruey* court further noted:

>The troublesome question that arises for plaintiffs, then is this: why would Congress *expressly deny* a cause of action with respect to parties in privity, while at the same time *impliedly create* a cause of action for parties not in privity? There is no apparent reason, and to argue that Congress intended such a significant incongruity strains credulity.

*Cruey*, 174 F.Supp.2d at 529.

The *Cruey* court further noted that the very purpose of the statute at issue also supports the conclusion that Congress did not intend to create a cause of action against third parties such as Geotrac. The Act makes no mention of protection of borrowers or borrower reliance on third person special flood hazard determinations. Instead, the *Cruey* court pointed out that Congress was satisfied with the protection given to both borrowers and lenders in the statute, so that a private cause of action was not necessary. In doing so, the *Cruey* court pointed to the legislative history found in H.R. Conf. Rep. 103-658, § 528, which states:

> The Conferrees recognize and intend that the guarantees for third party information in this provision *are adequate to protect the interests of the borrower* and to ensure the quality of the information provided by the third party. Since the lender is relying on the guarantee in order to ensure compliance with the mandatory flood insurance purchase requirements, lenders have ample incentives to ensure that the guarantees are adequate to protect the lender.

*Cruey*, 174 F.Supp.2d at 529. (Emphasis supplied by *Cruey* court). Upon reviewing the legislative history, the *Cruey* court then stated that:

> This portion of the legislative history, then, would seem to relieve any doubt as to the existence of a borrower's implied right of action against a third 'person' supplying special hazard determination information. Simply put, Congress clearly intended to protect borrowers against inaccurate special flood hazard determinations *not* by granting a private cause of action, but rather by assuring that *lender themselves* have incentive to ensure the accuracy of such determinations. The language is unmistakable: "[Congress] recognize[d] and intend[ed] that the guarantees for third party information in this provision are adequate to protect the interests of the borrower."

*Id*. at 530 (emphasis in original).

In *Laurent v. Flood Data Services, Inc.*, the Ohio Court of Appeals affirmed summary judgment in favor of Flood Data Services, Inc. 766 N.E.2d 221 (Ohio Ct. App. 2001). In *Laurent*, the plaintiffs made no allegation of a National Flood Insurance Act violation. Instead, the plaintiffs only asserted claims for breach of contract, negligence, and negligent misrepresentation, all of which arose from an allegedly faulty flood zone determination by Defendant Flood Data Services. *Id.* The *Laurent* court held that Flood Data Services had performed the determination solely for the lender's compliance with the National Flood Insurance Act and not as a result of any relationship with the Plaintiffs. *Id.* at 401. The court further noted that because there was no relationship between the plaintiffs and defendant, no duty existed with regard to the Plaintiffs negligence claims. *Id.*

In the case of *McKinley v. Northern Associates, Inc.*, the Superior Court of Massachusetts undertook an analysis of the Act, as well as the legislative history of the Act as it related to state law negligence claims. *McKinley v. Northern Associates, Inc.*, 1998 WL 1184144 (Mass. Sup. Ct. Jan. 5, 1998). The court determined that the Act only established duties to be carried out by federal agencies in connection with the supervision of lending institutions and did not authorize private borrowers to bring a direct suit for money damages against a defendant for a statutory violation. *Id.* at 3. Instead, the *McKinley* court held that the Act was designed to limit financial losses related to property damage by flooding. *Id.* On that basis, the court dismissed the plaintiff's state law negligence claims. *Id.* at 4.

Similarly, in *Pippen v. Burkhalter*, the South Carolina Supreme Court again examined the Act, as amended in 1973, and determined that any violations of the federal statute would fall to federal regulatory agencies and not the courts. *Pippen v. Burkhalter*, 279 S.E.2d 603 (S.C. 1981). As such, the *Pippen* Court reversed the trial court's judgment in favor of the plaintiffs and dismissed all state law claims. *Id.* Moreover, in the case of *R.B.J. Apartments, Inc. v. Gate City Savings & Loan Association*, the North Dakota Supreme Court affirmed summary judgment in favor of the defendant, stating that "it is not within the competence of the judiciary to amend these comprehensive enforcement schemes by adding to them another private remedy not authorized nor intended by Congress." *R.B.J. Apartments, Inc. v. Gate City Savings & Loan Association*, 315 N.W.2d 284, 289 (N.D. 1982).

State courts have also had the opportunity to review plaintiffs' fraud claims that arise out of the flood zone determinations performed under the Act. For example, in *Mid-America National Bank v. First Savings & Loan Association*, the Illinois Court of Appeals held that the language and legislative history of the Act did not allow room for private causes of action by individual purchasers. *Mid-America National Bank v. First Savings & Loan Association*, 515 N.E.2d 176, 180 (Ill. App. Ct. 1987). The court further dismissed the plaintiff's contentions that the relationship between the lender and the borrower created a fiduciary duty, and that the lender voluntarily assumed a duty to protect the plaintiffs from flood hazards. *Id.* As such, all claims of fraud were dismissed. *Id.*

In *Custer v. Homeside Lending, Inc.*, the plaintiff filed suit against a mortgage

company that "forced-placed" flood insurance at a level beyond which the plaintiff felt appropriate. *Custer v. Homeside Lending, Inc.*, 858 So.2d 233 (Ala. 2003). In upholding summary judgment in favor of the mortgage company, the Alabama Supreme Court cited with approval the case of *Mid-America National Bank v. First Savings & Loan Association*. *Id.* at 243. The Court quoted extensively from that case which, as stated above, came to the conclusion that the language and legislative history of the Act did not allow for private causes of actions by individual home purchasers. In quoting *Mid-America*, *supra*, the Alabama Supreme Court stated that "no implied federal private cause of action existed under the circumstances of [that] case." *Id.* at 244. The Court further pointed out that the statute in question was not enacted for the special benefit of the borrowers. *Id.* at 244-245 (quoting *Hofbauer v. N.W. Nat'l Bank of Rochester*, 700 F.2d 1197 (8th Cir. 1983)). Instead, the Court correctly noted that the statute is concerned with protecting lenders, not borrowers. *Id.*

Considering *Custer*'s holding and citations, is clear that Alabama law follows the long line of cases cited above, all of which stand for the proposition that no private right of action exists on behalf of a borrower with respect to determinations made under the National Flood Insurance Act. As stated above, every court which has had an opportunity to decide the issue has determined that the protections afforded to lenders under the statute extend equally to flood determination companies who perform flood zone determinations on behalf of a lending institution. In this case, Geotrac was hired by Dovenmuehle Mortgage to perform the flood zone determination at issue. In doing so, Geotrac was acting on behalf of

10

Dovenmuehle, and therefore is afforded the same protections given to Dovenmuehle under the Act and as indicated in the long line of cases cited above.

Along similar lines, in the case of *Brushwitz v. Ezell*, the plaintiffs hired an appraiser to inspect a home for wood fungus and termites prior to purchase. *Brushwitz v. Ezell*, 757 So.2d 423 (Ala. 2000). The appraiser certified that the home was free of termites, and the plaintiffs subsequently purchased the home. *Id.* The plaintiffs later discovered that the home was infested with termites and contained wood fungus and rotted lumber. *Id.* As a result, the plaintiffs sued the appraiser claiming that they would not have purchased the home had they known of its actual condition. *Id.*

The Alabama Supreme Court affirmed summary judgment on the basis that the appraiser had not been hired by the plaintiffs, but instead was hired by Northwest Bank, the lending institution providing the plaintiff's mortgage. The Court determined that because the appraiser had no confidential relationship with the plaintiffs, he simply owed them no duty. Clearly, this is identical to the situation at hand. Geotrac was hired by the Plaintiffs' lending institution, Dovenmuehle Mortgage, and had no connection with the Plaintiffs' whatsoever. In fact, Mr. Clark explicitly stated that he never contracted with Geotrac. (See Deposition of Arthur Earl Clark at page 285). The *Brushwitz* Court further held that the appraiser owed no duty to the plaintiffs under the negligence claim because the appraiser was hired not by the plaintiffs, but instead by the lending institution. *Id.* at 433. As such, the Court held that the plaintiffs lacked the ability to maintain such an action. *Id.*

As described above, several courts have addressed the issue of whether the National Flood Insurance Act protects not only banks, but third party flood determination companies as well. Each of these courts have come to the same conclusion that there is no private cause of action for borrowers as against third party flood determinations companies. The *Cruey* court makes the rationale behind such a determination clear. Congress simply did not intend for such a right to exist. The protections afforded by the Act are applicable not only to banks, but are also extended to third parties who provide information to banks. In a sense, those third parties are simply an arm of the bank. They are an agent of the bank and working for it to provide information that the bank will rely on in its compliance with the Act. This statute specifically gives rights to the bank to rely upon said information, even if the information is incorrect.

Clearly, the possibility of incorrect information was envisioned by Congress. Otherwise, the protections would not be included. Because Congress specifically envisioned the possibility of incorrect determinations, it could have provided a cause of action for borrowers. However, it chose not to do so. It is not the judiciary's responsibility to create a cause of action where Congress expressly declined to do so. Thus, it is clear that no cause of action exists as against third party flood zone determination companies such as Geotrac. Though this result may seem harsh, Congress clearly anticipated such a result and determined that the protections were adequate both as to borrowers and to lenders. The law should be upheld as envisioned by Congress when the statute was created.

There is no question that the flood zone determination performed in this case arose out of the lending institution's duties under the National Flood Insurance Act. Because the Act provides no cause of action, but instead sets forth a federal regulatory scheme to deal with these issues, the action simply cannot be maintained. Moreover, the case of *Brushwitz v. Ezell* clearly demonstrates that the Clarks simply have no cause of action against Geotrac. *See Brushwitz*, 757 So.2d 423 (Ala. 2000). They did not hire Geotrac, they did not have a contract with Geotrac, and they did not pay Geotrac for its services. The Supreme Court has made it very clear that under that scenario, Geotrac simply owes no duty to the Clarks and therefore cannot be held liable for any errors or omissions they may now be accused of making. As such, summary judgment is due in favor of Defendant Geotrac on all allegations of the Plaintiff's Complaint.

**II.    IN THE EVENT THAT THE PLAINTIFFS ARE THIRD PARTY BENEFICIARIES TO THE SERVICE AGREEMENT BETWEEN DOVENMUEHLE MORTGAGE AND GEOTRAC, ANY DUTY OWED TO PLAINTIFFS WAS DEFINED BY SUCH CONTRACT.**

In the event this Court finds the overwhelming case law cited above unpersuasive, then each of the Plaintiffs' individual claims must be analyzed. In their Complaint, the Clarks allege several claims, including breach of contract, unjust enrichment, conversion, negligence, breach of duty to a third party beneficiary, fraud, violations of the Fair Credit Reporting Act, and violations of the Fair Debt Collection Practices Act.

**A.    Negligence and Breach of Contract Claims.**

In the event this Court finds the immunity afforded by the National Flood Insurance

Act fails to extend to third party flood zone determination companies, thereby creating a duty owed to Plaintiffs, such duty owed by Geotrac would be defined by the Service Agreement entered into by Geotrac and Dovenmuehle Mortgage, thereby possibly making the Plaintiffs a third party beneficiary to said contract.

In order to state a claim under a third party beneficiary theory, the Clarks must prove that the contracting parties, at the time they entered into the contract, "intended...to bestow a direct benefit upon a third party," and that the Plaintiff "was the intended beneficiary of the contract," and "that the contract was breached." *Bush v. Laggo Prop., LLC*, 784 So.2d 1063, 1066 (Ala. Civ. App. 2000) (quoting *Sheetz, Aiken & Aiken, Inc. v. Spann, Hall, Ritchie, Inc.*, 512 So.2d 99, 101-102 (Ala. 1987)). However, the deposition testimony of Mr. Clark clearly demonstrates that the Plaintiffs were not a third party beneficiary. In fact, when asked about his relationship to Geotrac, Mr. Clark admitted that there was no contractual relationship between the two, and the only contact he had with Geotrac was an oral request to provide the map Geotrac had used in its flood zone determination, which Geotrac provided to him at no cost. (See Deposition of Arthur Earl Clark at page 280). Moreover, the flood zone determination was performed not at the request of the Clarks, but at the request of the lender in order to maintain compliance with the National Flood Insurance Act. As such, the Clarks were clearly not contemplated in the agreement between Dovenmuehle Mortgage and Geotrac.

If, however, the Plaintiffs are deemed to be third party beneficiaries to said contract,

the duty owed to them is limited by the contract terms. *See Otis Elevator of Gadsden v. Scott*, 586 So.2d 200, 205 (Ala. 1991) (holding that the scope of elevator company's duty to victim would be determined by the provisions of the company's contract with the hospital). In this instance, pursuant to the Service Agreement between Dovenmuehle and Geotrac, Geotrac was contractually obligated to review the applicable maps and determine if the property at issue was in a flood zone. (See Service Agreement, Exhibit "A"). The contract between Geotrac and Dovenmuehle specifically allows Geotrac to rely exclusively on outside sources, such as the FEMA and Houston County maps. Moreover, to the extent that there is an error in the maps, Geotrac is not responsible for such an error. The contract specifically states that Geotrac cannot be held responsible for errors in such sources. Obviously, if Geotrac were not permitted to rely on the FEMA and Houston County maps, determination of whether a piece of property was in a flood zone would be a significant undertaking and would require charges significantly in excess of that charged by Geotrac. Mr. Clark himself agreed with that assertion. (See Deposition of Arthur Earl Clark at pages 283 -284).

Additionally, Mr Clark testified in his deposition testimony that Geotrac met its contractual obligations. Specifically, after reviewing the FEMA map, Mr. Clark himself agreed that the map detailed his property as consisting not only of the parcel on which his home is located, but also the parcel now owned by his neighbors. *Id.* at 287. It is undisputed that the maps Geotrac used to make its flood zone determination were incorrect. However, as stated above, the Service Agreement entered into by Dovenmuehle and Geotrac, of which

15

the Plaintiffs claim to be a third party beneficiary, permits Geotrac to rely on the FEMA map when making its determinations. Geotrac did so in the instant case, thereby discharging any duty owed. As such, because Geotrac fulfilled its contractual obligations under the contract, it cannot be held liable for breach of contract, negligence, or breach of duty to a third party beneficiary. Therefore, summary judgment is due in favor of Defendant Geotrac on all allegations of the Plaintiff's Complaint.

> **B.  The Plaintiff Admits That the Remaining Claims are Inapplicable to Defendant Geotrac.**

In Count II of their Complaint, the Clarks ambiguously allege that the "Defendants received funds from the Clarks to which they were not entitled." (See Complaint ¶ 28). Unjust enrichment has been defined as "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity." *Tucker v. Scrushy*, 2006 WL 37028 (Ala. Cir. Ct. Jan. 3, 2006). In order to obtain restitution, the Clarks are required to show that Geotrac was unjustly enriched, that it secured a benefit, and that it would be unconscionable to allow them to retain that benefit. *Id*. In the instant case, Geotrac was not unjustly enriched nor did it receive any benefit. In its contract with Dovenmuehle, Geotrac was paid a nominal fee by the mortgage company to perform the flood zone determination. When asked whether Geotrac was ever paid by him, Mr. Clark testified that he never directly paid Geotrac and none of his mortgage statements reflected a payment to Geotrac for its services. (See Deposition of Arthur Earl Clark at pages 289-290). As such, the unjust enrichment claim as against Defendant Geotrac

16

is due to be dismissed.

With respect to conversion, there must be a wrongful taking or wrongful detention or interference, or illegal assumption of ownership, or illegal use or misuse of another's property. *See Gillis v. Benefit Trust Life Ins. Co.*, 601 So.2d 951 (Ala. 1992); *Covington v. Exxon Co., U.S.A.,* 551 So.2d 935 (Ala. 1989); *Ott v. Fox*, 362 So.2d 836 (Ala. 1978). As stated in the previous section, Mr. Clark testified in his deposition that he never directly paid Geotrac, and his mortgage statements never reflected that any amount he was paying to his lender was ever received by Geotrac. The only money Geotrac received for its services was a nominal fee paid by Dovenmuehle and not the Plaintiffs. As such, the conversion claim as against Defendant Geotrac is due to be dismissed.

In Count VI of the Plaintiff's Complaint, the Clarks allege that the Defendants represented to them that their property was in a flood zone, and that such representation was false and misleading. (See Complaint ¶¶ 40, 41). In the alternative, Plaintiffs claim that the "representations made by the Defendants were false and were made by mistake but with the intention that the Clarks should rely on them." *Id.* at ¶ 42.

In order to maintain fraud action, the Plaintiffs must establish (1) that Geotrac made a false representation, (2) that the misrepresentation involved a material fact, (3) that the Plaintiffs relied on the misrepresentation, and (4) that the misrepresentation damaged the Plaintiffs. *See Baker v. Metro. Life Ins. Co.*, 907 So.2d 419, 421 (Ala. 2005). In the instant case, the Clarks simply cannot establish that Geotrac made a false representation. In fact, in

17

his deposition testimony, Mr. Clark explicitly stated that no one from Geotrac ever told him something that was untrue. (See Deposition of Arthur Earl Clark at page 281). Moreover, after viewing the maps Geotrac used to make its flood zone determination, Mr. Clark admitted that the maps detailed just as Geotrac had reported to Dovenmuehle. *Id.* at 281-282. Therefore, the Clarks cannot maintain a fraud action against Geotrac because, as Mr. Clark admitted, there was never any false representation. As such, because the Plaintiffs cannot meet its burden, the fraud claims as against Geotrac are due to be dismissed.

Finally, in Counts VII and VIII of the Plaintiffs' Complaint, the Clarks allege violations of the Fair Credit Reporting Act and Fair Debt Collection Practices Act. However, these claims appear to be targeted at AmSouth and Dovenmuehle, and not Geotrac. In fact, Mr. Clark even stated in his deposition testimony that Geotrac never attempted to collect money from him, nor did Geotrac ever attempt to put anything on his credit report. (See Deposition testimony of Arthur Earl Clark at page 292). As such, Counts VII and VIII are inapplicable to Defendant Geotrac and are due to be dismissed.

## CONCLUSION

There is no question that the flood zone determination performed in this case arose out of the lending institution's duties under the National Flood Insurance Act cited above. Because the Act provides no private cause of action, but instead sets forth a federal regulatory scheme to deal with these issues, the action cannot be maintained. Moreover, *Brushwitz v. Ezell* clearly demonstrates that the Plaintiffs simply have no causes of action

against Geotrac. 757 So.2d 423 (Ala. 2000). They did not hire Geotrac, they did not contract with Geotrac, and they did not pay Geotrac for its services. As such, the Plaintiffs simply have no basis to assert claims against them. The Supreme Court has made it very clear that under such a scenario, Geotrac owes no duty to the Plaintiffs and therefore cannot be held liable for any errors or omissions they may now be accused of making.

WHEREFORE, Defendant Geotrac respectfully requests that this Court enter an Order granting a full and final summary judgment as to all allegations of the Plaintiffs' Complaint as against this Defendant. The Defendant further requests that said judgment be made final pursuant to Rule 54(b) of the *Federal Rules of Civil Procedure*, there being no just reason for delaying the entry of final judgment.

Respectfully submitted,

*s/Joseph E. Stott*
ASB-4163-T71J
Attorney for Defendant Geotrac, Inc.
**SCOTT, SULLIVAN, STREETMAN & FOX, P.C.**
2450 Valleydale Road
Birmingham, Alabama 35244
Phone: 205-967-9675
Facsimile: 205-967-7563
E-mail: jstott@sssandf.com Email Joseph Stott

## IN THE UNITED STATE DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **ARTHUR EARL CLARK AND** ) | |
| **BARBARA E. CLARK,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **Civil Action Number** |
| ) | **1:05-cv-00747-VPM** |
| **AMSOUTH MORTGAGE COMPANY, INC.,** ) | |
| **DOVENNUEHLE MORTGAGE INC., GEOTRAC** ) | |
| **INFORMATION SYSTEM SPECIALIST, and** ) | |
| **EMPIRE FIRE AND MARINE INSURANCE** ) | |
| **COMPANY,** ) | |
| **Defendants.** ) | |

### CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Douglas M. Bates, Esq., Clifford W. Jarrett, Esq., George W. Walker, III, Esq., Thomas W. Thagard, III, Esq. and John David Collins, Esq. and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: _____.

    Respectfully submitted,

*s/Joseph E. Stott*
ASB-4163-T71J
Attorney for Defendant Geotrac, Inc.
**SCOTT, SULLIVAN, STREETMAN & FOX, P.C.**
2450 Valleydale Road
Birmingham, Alabama 35244
Phone: 205-967-9675
Facsimile: 205-967-7563
E-mail: jstott@sssandf.com Email Joseph Stott