# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| ARTHUR EARL CLARK AND<br>BARBARA E. CLARK,<br><br>　　　　Plaintiffs,<br><br>v.<br><br><br>AMSOUTH MORTGAGE COMPANY, INC.,<br>et al.<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)　CIVIL ACTION NUMBER<br>)　1:05-cv-00747-MHT-VPM<br>)<br>)<br>)<br>)<br>)<br>) |

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF
## DEFENDANTS AMSOUTH BANK AND
## <u>DOVENMUEHLE MORTGAGE, INC.</u>

                                            THOMAS W. THAGARD, III
                                            JOHN DAVID COLLINS

                                            ATTORNEYS FOR DEFENDANTS
                                            AMSOUTH BANK AND DOVENMUEHLE
                                            MORTGAGE, INC.

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
2400 AMSOUTH/HARBERT PLAZA
1901 SIXTH AVENUE NORTH
BIRMINGHAM, ALABAMA 35203-2618
TELEPHONE: 205-254-1000
FACSIMILE: 205-254-1999

01340416.1

## I.   INTRODUCTION

Plaintiffs Arthur and Barbara Clark filed this action on June 22, 2005, asserting federal and state law claims arising out of the servicing of their mortgage loan. Specifically, Plaintiffs claim that Dovenmuehle Mortgage, Inc. ("DMI") and AmSouth Bank ("AmSouth") made unauthorized advancements for the purchase of flood insurance coverage based upon flood hazard determinations provided by Geotrac of America, Inc. ("Geotrac") which, in turn, caused Plaintiffs to fall behind on their mortgage, accrue late charges, and receive negative marks on their credit.

DMI and AmSouth, however, are immune from all of Plaintiffs' claims pursuant to the National Flood Insurance Act ("NFIA"). This is because the flood insurance at issue was purchased based upon "guaranteed" flood determinations supplied by Geotrac, a third-party hazard determination company. Moreover, immediately after receiving notification from Geotrac that its prior determinations were inaccurate, DMI reviewed, analyzed, corrected, and fully refunded Plaintiffs' mortgage account over one year prior to the date this lawsuit was filed. Accordingly, Plaintiffs have not been damaged.

For these reasons, and as stated in further detail below, DMI and AmSouth are entitled to summary judgment as to all claims asserted in Plaintiffs' complaint.

## II.   STATEMENT OF UNDISPUTED FACTS

1.   Arthur E. Clark and Barbara Clark ("Plaintiffs") obtained a loan (the "Loan") from American Federal Savings Bank of Duval County ("American Federal") on August 24, 1988. (A. Clark Depo. at p. 55, l. 9 – p. 56, l. 12; Przybyla Aff., ¶ 2.)

2.   At that time, Plaintiffs executed a promissory note (the "Note") in favor of American Federal in the original principal amount of $114,800.00. (A. Clark Depo. at p. 55, l. 9 – p. 56, l. 12 and Ex. 1 thereto; Przybyla Aff., ¶ 2.)

2

3. The Note was secured by a first mortgage (the "Mortgage") executed by Plaintiffs in favor of American Federal. The Mortgage granted American Federal a security interest in the home owned by Plaintiffs in Dothan, Alabama. (A. Clark Depo. at p. 55, l. 9 – p. 56, 1. 12 and Ex. 1 thereto; Przybyla Aff., ¶ 2.)

4. The Note provides, in part, as follows:

> **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the property insured against loss by fire, hazards included within the term 'extended coverage' and any other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods the Lender requires.

(Ex. 1 to A. Clark Depo. at ¶ 5.)

5. Plaintiffs' Note and Mortgage was later sold or assigned to AmSouth Bank. (A. Clark Depo. at p. 68, 1. 7-12.)

6. On or about October 1, 1997, DMI began subservicing the Mortgage on behalf of AmSouth Bank. As mortgage subservicer, DMI was under contract to perform AmSouth Bank's servicing duties. (Przybyla Aff., ¶ 3.)

7. On or about November 1, 2002, Dovenmuehle Funding, Inc., a wholly-owned subsidiary of DMI, entered into a Service Agreement with Geotrac of America, Inc. ("Geotrac"), a third-party flood hazard determination company, on behalf of itself and DMI to identify secured real estate in special flood hazard areas as required under the National Flood Insurance Act, 42 U.S.C. § 4001, et seq. so that Dovenmuehle Funding, Inc. and DMI would remain in compliance with federal law in connection with their respective lending and servicing activities. (Przybyla Aff., ¶ 4 and Ex. A thereto.)

8. The Service Agreement required Geotrac to provide "guarantees for accuracy on all FZDs [flood zone determinations], and Life of Loan tracking and reprocessing backed by external insurance." (Przybyla Aff., ¶ 5 and Ex. A thereto.)

9. On December 5, 2002, pursuant to its obligations under the Service Agreement, Geotrac submitted to DMI a Federal Emergency Management Agency Standard Flood Hazard Determination ("SFHD") indicating that Plaintiffs' home was located in a Special Flood Hazard Area ("SFHA"). (Przybyla Aff., ¶ 5 and Ex. B thereto.)

10. On June 10, 2003, DMI wrote a letter to Plaintiffs requesting a copy of their "current flood insurance policy." (Ex. 3 to A. Clark Depo.)

11. A few weeks later, on July 7, 2003, Geotrac supplied DMI/AmSouth with another SFHD again reflecting that Plaintiffs' home was located in a SFHA. (Ex. 4 to A. Clark Depo.; Przybyla Aff., ¶ 5 and Ex. C thereto.)

12. By letter dated July 17, 2003, DMI wrote to Plaintiffs advising, in part, as follows:

> We have received notice that your flood insurance has been cancelled or expired. We have not received a new or renewal flood insurance policy covering the property location shown above. The Flood Disaster Protection of 1973, a Federal Law, requires that flood insurance be purchased and maintained on certain mortgage loans. … We previously determined that your property is located in a SFHA. You are required by the terms of your mortgage and Federal Law to maintain flood insurance on the property address shown above. … If you do not provide the necessary flood insurance information for this property we have the right to purchase flood coverage to protect our interest. If we obtain flood insurance coverage, the insurance premium may be considerably higher than insurance you can purchase.

(Ex. 4 to A. Clark Depo.)

13. In response to the correspondence outlined above, Plaintiff Arthur Clark telephoned DMI/AmSouth to question the determination that his home was located in a SFHA. (A. Clark Depo. at p. 101, l. 6 – p. 103, l. 20; p. 106, l. 23 – p. 109, l. 22.)

14. Mr. Clark admits that, if his home is located in a flood zone, DMI/AmSouth has the contractual right to obtain insurance to protect its interest in the property by advancing monies for flood insurance coverage if Plaintiffs refused to do so. (A. Clark Depo. at p. 99, l. 6-23.)

15. Mr. Clark is a licensed insurance agent with over 35 years of experience in the sale of life, health, accident, and property/casualty insurance products. (A. Clark Depo. at p. 32, l. 11-13; p. 44, l. 3-7.)

16. Plaintiffs refused to obtain flood insurance because they were not provided with "documentation" from proper "authorities" establishing that their home was in a SFHA. (A. Clark Depo. at p. 117, l. 2 -21; p. 142, l. 5 – p. 145, l. 16; Przybyla Aff., ¶ 6.)

17. Plaintiffs wanted DMI/AmSouth to waive the requirement for flood insurance until their dispute could be resolved. (A. Clark Depo. at p. 214, l. 21 – p. 215, l. 21.)

18. Pursuant to federal law and its contractual obligations, DMI refused to waive the requirement for flood insurance coverage and, on August 18, 2003, advanced $808.00 for the purchase of a flood insurance policy in order to protect the lender's interest in the property and to comply with applicable federal law. This advance required DMI/AmSouth to create an escrow account with a (negative) balance of $808.00. (Przybyla Aff., ¶ 7.)

19. On September 25, 2003, DMI/AmSouth once again wrote to Plaintiffs reminding them of the flood insurance requirement. (A. Clark Depo. at p. 180, l. 1 – p. 181, l. 8.)

20. To correct the negative escrow balance created by DMI/AmSouth's advancement for the purchase of flood insurance, Plaintiffs were advised that, effective November 1, 2003, their monthly mortgage payments on the Loan would be temporarily increased from $783.91 to $841.02 until such time as the escrow advance had been repaid. (A. Clark Depo. at p. 148, l. 23 – p. 150, 1. 19; Przybyla Aff., ¶ 8.)

21. Plaintiffs, however, refused to submit the required, increased payment amount for November 2003 because they were not sufficiently "convinced" that they were actually in a SFHA. Instead, Plaintiffs submitted the old payment of $783.91. (A. Clark Depo. at p. 150, l. 6 – 19; p. 157, l. 4 - 20; Przybyla Aff., ¶ 9.)

22. On November 25, 2003, DMI/AmSouth wrote to Plaintiffs to remind them that their new payment was $841.02. Plaintiffs nevertheless submitted another "short payment" of $783.91 for December 2003. (Przybyla Aff., ¶ 10.)

23. On or about December 26, 2003, Geotrac provided DMI/AmSouth with a third SFHD. This form stated, in part, as follows: "RE-EVALUATION DONE WITH NO CHANGE TO ORIGINAL FLOOD CERTIFICATION," again confirming that Plaintiffs' home was in a flood zone. (A. Clark Depo. at p. 152, l. 20 – p. 254, l. 5 and Ex. 11 thereto; Przybyla Aff., ¶ 11.)

24. Plaintiffs submitted another "short payment" in January 2004. This payment was placed in suspense because Plaintiffs continued to submit less than the full required monthly payment. After a reminder letter is sent, full payment is expected. (Przybyla Aff., ¶ 12.)

25. Plaintiffs submitted another "short payment" for February 2004. This payment, along with the monies in suspense, was applied to make the full payment due for January 2004, which included an escrow component for future flood insurance premiums, and to repay a

portion of the negative escrow balance, leaving Plaintiffs one month behind on their mortgage obligation. (Przybyla Aff., ¶ 12.)

26.     Plaintiffs began to receive monthly correspondence advising that their Loan was in default and that late charges and other fees were accruing. Plaintiffs admit that the default letters, late charges, and advancements were directly related to DMI/AmSouth's purchase of flood insurance coverage. (A. Clark Depo. at p. 158, l. 21 – p. 189, l. 20; Przybyla Aff., ¶ 12.)

27.     Plaintiffs submitted another $783.91 "short payment" in March 2004, and this payment was also placed in suspense. Plaintiffs' April 2004 "short payment" was applied (along with some of the monies in suspense) in part to eliminate Plaintiffs' negative escrow balance and in part to monthly payments, leaving Plaintiffs two months behind on their mortgage obligation. (Przybyla Aff., ¶ 13.)

28.     In late April or early May 2004, Plaintiff Arthur Clark telephoned Geotrac to request a map and any information indicating that his home was located in a SFHA. (A. Clark Depo. at p. 182, l. 14 – p. 183, l. 7.)

29.     By letter dated May 4, 2004, Geotrac responded to Mr. Clark's inquiry regarding the determination that his home was located in a SFHA. Geotrac's letter states, in part, as follows:

> Occasionally situations arise where a structure is shown as being in a federally defined Special Flood Hazard Area (SFHA) even though the structure is, in fact, elevated above the 100 year flood elevation. This occurs because federal flood maps may not reflect every rise and fall in terrain. Flood Zones may be drawn incorrectly and include areas not actually in a "100 year flood plain," but show in the SFHA.
> These maps are the only legal source of flood information used to determine if flood insurance is required. Until the map is changed through a legal process, lenders are bound by the information shown on the Federal Insurance Administration maps and cannot make any determination to the contrary to the in-force map. Federal law allows no discretion by the lender or their flood vendors. Other sources of flood information; local officials, surveyors, appraisers, private

> flood studies elevation certificates and elevation data cannot be sued to waive the flood insurance requirement.
>
> Fortunately, there is a procedure for resolving such issues. The Federal Insurance Administration has created a system where a property owner may submit elevation materials in support of a Letter of Map Amendment (LOMA) to remove the property or structure from the SFHA. Lenders, community officials, county engineers, and other agencies have no authority in this matter.

(A. Clark Depo. at p. 183, l. 1 – p. 185, l. 2 and Ex. 15 thereto.)

30. When Mr. Clark received this letter, he telephoned Geotrac and requested a copy of the FEMA flood map relied upon by Geotrac. (A. Clark Depo. at p. 184, l. 3-17.)

31. After reviewing the flood map, Mr. Clark determined that the "arrow" drawn by Geotrac referencing his house was actually pointing to a neighbor's house. (A. Clark Depo. at p. 196, l. 5 – p. 197, l. 11.) Mr. Clark correctly identified his house on the flood map and sent the map back to Geotrac for review. (A. Clark Depo. at p. 197, l. 10; p. 281, l. 7 – p. 282, l. 16.)

32. Geotrac ultimately concluded that the FEMA flood map and Houston County tax map were inaccurate because they indicated that Plaintiffs' home was on the same tract of land as a structure owned by a neighbor. The inaccurate maps resulted in Geotrac's determination that Plaintiffs' home was located in a SFHA. (A. Clark Depo. at p. 281, l. 7 – p. 282, l. 16.)

33. On May 28, 2004, Geotrac wrote to Mr. Clark advising, in part, as follows:

> After re-evaluation of the location of your home @ 8530 S. County Road 55 (our geo#44266976) we find your structure is just outside SFHA in Zone CX. We did add comments "SFHA Zone A extremely close to structure" & "Structure location based on map provided". I have called & resent to Dovenmuehle Mtg an updated flood zone determination stating "NO flood insurance required."

(Ex. 17 to A. Clark Depo.; Przybyla Aff., ¶ 14 and Ex. E thereto.)

34. That same day, DMI/AmSouth wrote to Plaintiffs' confirming that their "property does not lie in a special flood hazard area" and they were no longer "required to carry flood insurance." (A. Clark Depo. at p. 200, l. 1-12 and Exs. 18 and 19 thereto; Przybyla Aff., ¶ 15.)

8

35.     On June 1, 2004, DMI/AmSouth refunded Plaintiff's account $808.00, representing the amounts advance for purchase of flood insurance. DMI also reimbursed or waived all late fees and charges ($315.40) charged to Plaintiffs between November of 2003 and June of 2004. (Przybyla Aff., ¶ 16.)

36.     In addition to refunding Plaintiffs' mortgage account, DMI/AmSouth contacted the major credit reporting agencies to request that they correct any negative reporting on Plaintiffs' account from August of 2003 through June of 2004. (Przybyla Aff., ¶ 17.)

37.     DMI/AmSouth later discovered that $10.25 in property inspection fees had been overlooked in the refund process, and refunded Plaintiffs' mortgage account for these fees as well. (Przybyla Aff., ¶ 18.)

### III.    SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure authorizes entry of summary judgment when the pleadings and supporting materials demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is appropriate when plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which plaintiff will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). A plaintiff cannot defeat a properly supported motion for summary judgment without an affirmative presentation of specific facts showing a genuine issue, and may not merely rely on the general allegations of the pleadings. See Anderson, 477 U.S. at 248. A mere "scintilla" of evidence supporting plaintiff's position is not enough to survive summary judgment; plaintiff must produce evidence so a jury could reasonably find for him. See Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990)(citing Anderson, 477 U.S. at 242).

### IV. LAW AND ARGUMENT

**A. PLAINTIFFS' CLAIMS ARE BARRED THE NATIONAL FLOOD INSURANCE ACT.**

**1. Section 42 U.S.C. § 4014b(d) Expressly Forecloses Claims Arising Out of the Lender-Placement of Flood Insurance.**

The National Flood Insurance Act ("NFIA"), 42 U.S.C. §§ 4001, et seq. requires regulated lenders of mortgage real estate loans to determine if the borrower's property is located in a special flood hazard area and, if so, notify the borrower that he or she must obtain an appropriate amount of flood insurance. 42 U.S.C. § 4012a(e)(1). If a borrower fails to purchase the required insurance within 45 days after notification, "the lender or servicer for the loan **shall purchase the insurance on behalf of the borrower and may charge the borrower for the cost of premiums and fees incurred by the lender or servicer for the loan in purchasing the insurance**." 42 U.S.C. § 4012a (e)(2). Section 4104b(d) of the NFIA grants lending institutions the authority to delegate the acquisition of information needed to complete a SFHD to a third-party determination company if the third-party "guarantees the accuracy of the information" provided. 42 U.S.C. § 4014b(d). Subsection (e) of § 4104b governs the extent to which lending institutions may rely on information provided by a person other than the lending institution:

> (e) Reliance on previous determination
>
> Any person increasing, extending, renewing, or purchasing a loan secured by improved real estate or a mobile home may rely on a previous determination of whether the building or mobile home is located in an area having special flood hazards (**and shall not be liable for any error in such previous determination**), if the previous determination was made not more than 7 years before the date of the transaction ….

42 U.S.C. § 4014b(d). This subsection "amounts to an *express denial* **of a cause of action by the borrower as against the lender** …". Cruey v. First American Flood Data Services, Inc., 174 F.Supp.2d 525 (E.D. Ky 2001) (holding that the immunity provided to lenders and servicers

10

under the statute is broad enough to extend to third-party determination companies who supply the erroneous information forming the basis of the borrower's dispute) (emphasis added; italics in original).

In the present case, DMI, it its capacity as loan servicer for AmSouth, engaged Geotrac, an approved third-party hazard determination company, to monitor the flood hazard status of structures secured by loans held by AmSouth. In accordance with federal law, the Service Agreement requires Geotrac to provide "guarantees for accuracy on all FZDs [Flood Zone Determinations], and Life of Loan tracking and reprocessing backed by external insurance." (Przybyla Aff., ¶ 4 and Ex. A thereto.) On December 5, 2002, Geotrac supplied DMI with an SFHD indicating that Plaintiffs' home was located in a special flood hazard area. (Przybyla Aff., ¶ 5 and Ex. B thereto.) Geotrac reconfirmed this finding by submitting additional SFHDs on July 7, 2003 and December 26, 2003, respectively. (Exs. 7, 11 to A. Clark Depo.; Przybyla Aff., ¶ 5 and Exs. C and D thereto.)

In reliance upon the SFHDs provided by Geotrac, DMI demanded that Plaintiffs obtain flood insurance coverage. (Ex. 4 to Plaintiff's Deposition; Przybyla Aff., ¶ 6.) When Plaintiffs refused to do so, DMI advanced $808 for the purchase of flood insurance in order to protect the lender's interest in the property and to comply with § 4012a(e)(2) of the NFIA. (Przybyla Aff., ¶¶ 6-7.) Geotrac later informed DMI that the SFHDs it had provided were incorrect and that, despite its previous findings, Plaintiffs' home was not located in a SFHA. (Ex. 17 to A. Clark Depo.; Przybyla Aff., ¶ 14.) DMI, in turn, immediately cancelled the flood insurance policy and refunded the unearned premium to Plaintiffs' mortgage account. (A. Clark Depo. at p. 200, l. 1-7 and Exs. 18 and 19 thereto; Przybyla Aff., ¶ 16.)

11

Plaintiffs readily acknowledge that all of their claims relate to and arise out of the purchase of lender-placed flood insurance. (A. Clark Depo. at p. 158, l. 3-9; Complaint, ¶ 1.) As a result, all of their claims fall squarely within the broad grant of immunity set forth in § 4014b(e). Therefore, even though the flood determinations supplied by Geotrac ultimately proved to be inaccurate, DMI and AmSouth "**shall not be held liable**" for relying upon those determinations. Any conclusion to the contrary would necessarily deprive § 4014b(e) of any meaning.

>  **2.    If Failure to Comply with NFIA's Notification Requirements Does Not Give Rise to a Cause of Action, Good Faith Efforts to Comply with Those Requirements are Certainly Protected.**

It is well settled law that the notification requirements imposed by the NFIA do not implicitly create a federal cause of action in favor of borrowers. See Arvai v. First Fed. Sav. & Loan Ass'n, 698 F.2d 683, 684 (4th Cir. 1983); Till v. Unifirst Federal Savings and Loan Assoc., 653 F.2d 152 (5th Cir. 1981). While this does not necessarily preclude a state cause of action based on a violation of the standard of conduct imposed by federal law, courts that have considered the issue have rejected any such common law cause of action, based in part on principles of federalism. See Mid-Am. Nat'l Bank of Chicago v. First Sav. & Loan Ass'n of S. Holland, 515 N.E.2d 176, 180 (Ill, App. Ct. 1987) (holding that violation of NFIA cannot be used to create a duty giving rise to common law misrepresentation action); R.B.J. Apartments, Inc. v. Gate City Sav. & Loan Ass'n, 315 N.W.2d 284, 289 (N.D. 1982) (same as to common law negligence claim); Bigler v. Cetnerbank Mortgage Co., 1994 WL 711168 (Conn. Super. Ct. Dec. 12, 1994) (same as to negligence, misrepresentation and fraud actions); Wentwood Woodside I. KP v. GMAC Commercial Mortgage Co., 419 F.3d 310, 323 (5th Cir. 2005) (same as to negligence).

The plaintiffs in the cases cited above <u>actually suffered</u> flood damage due to a lender's failure to provide notification that their property was located in a flood zone as required by NFIA § 4012a, but their claims were nevertheless rejected on the grounds that borrowers are not the class of persons the statute was intended to protect. Plaintiffs here have not suffered an uninsured loss because AmSouth or DMI failed to notify them that their home was located in a flood zone. Instead, Plaintiffs contend that they were "damaged" because DMI purchased flood insurance (after Plaintiffs refused to do so) in reliance upon information provided by a reputable third-party determinant in full compliance with the NFIA.

If no private right of action exists for damages caused by a lender or servicer's <u>failure</u> to provide notification to a borrower that his or her secured property is located in a flood zone, then no cause of action (common law or otherwise) arises out of a lender or servicer's good faith effort to make sure its collateral and its borrowers' home are adequately protected. To the extent the viability of such a claim was ever in doubt, Section § 4012b(e)'s immunity provision clearly demonstrates Congress' intent to protect the very conduct complained of by Plaintiffs. DMI and AmSouth are entitled to summary judgment as to all claims asserted in the Complaint.

**B.    PLAINTIFFS' ACCOUNT WAS CORRECTED PRIOR TO THE TIME THIS LAWSUIT WAS FILED.**

As demonstrated above, AmSouth and DMI are completely immune from Plaintiffs' claims pursuant to the NFIA. Indeed, the only claims that would even hypothetically survive NFIA preemption are those arising <u>after</u> May 28, 2004 – the date Geotrac informed DMI that its previous flood zone determinations were inaccurate. Any such claims would also fail, however, because DMI <u>immediately</u> wrote to Plaintiffs to confirm that they were no longer required to carry flood insurance and promptly refunded all amounts advanced for the purchase of flood insurance and all late fees/charges resulting from the advancement. (Przybyla Aff., ¶16.) A few

13

weeks later, on June 29, 2004, DMI contacted the major credit reporting agencies to request that they correct any negative reporting on Plaintiffs' account from August of 2003 through June 2004. (Przybyla Aff., ¶ 17.) Since Plaintiffs' account was reviewed, analyzed, corrected and refunded within one month of receipt the revised SFHD (and approximately one year before this lawsuit was filed), Plaintiffs' claims are not only factually misguided, but barred for lack of damages.

## V. CONCLUSION

For the reasons stated in this brief, AmSouth Bank and Dovenmuehle Mortgage, Inc. respectfully request that this Court grant their Motion for Summary Judgment in all respects.

s/ John David Collins
Thomas W. Thagard III
John David Collins

Attorneys for Defendants Dovenmuehle Mortgage, Inc. and AmSouth Bank

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, Alabama 35203-2602
(205) 254-1000

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 14th day of June, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

DOUGLAS M. BATES
CLIFFORD W. JARRETT
424 SOUTH OATES STREET SUITE 1
DOTHAN, AL 36301

JOSEPH E. STOTT
SCOTT, SULLIVAN, STREETMAN & FOX, P.C.
2450 VALLEYDALE ROAD
P.O. BOX 380548
BIRMINGHAM, AL 35244

GEORGE W. WALKER, III
COPELAND, FRANCO, SCREWS & GILL, P.A.
444 SOUTH PERRY STREET
MONTGOMERY, AL 36014

                                                s/ John David Collins
                                                OF COUNSEL