IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **ARTHUR EARL CLARK AND**<br>**BARBARA E. CLARK,** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NUMBER** |
| | ) | **1:05-cv-747-VPM** |
| | ) | |
| **AMSOUTH MORTGAGE COMPANY, INC.,** | ) | |
| **DOVENMUEHLE MORTGAGE INC.,** | ) | |
| **GEOTRAC INFORMATION SYSTEM** | ) | |
| **SPECIALIST, and EMPIRE FIRE AND** | ) | |
| **MARINE INSURANCE COMPANY** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AFFIDAVIT

**STATE OF GEORGIA**

**COUNTY OF COBB**

Before me, the undersigned authority, a notary public in and for said County in said State, appeared **R. Mark Chapman**, who is known to me, is over the age of nineteen years, and has personal knowledge of the matters stated herein, and who, being first duly sworn, does depose and say:

"My name is **R. Mark Chapman**. I am a Senior Vice President with ZC Sterling Insurance Agency, Inc. ["ZC Sterling"]. ZC Sterling operates as a Program Manager for Empire Fire and Marine Insurance Company ["Empire"]. I have personal knowledge of the matters contained herein relating to the issuance of a lender placed flood insurance

policy in connection with property located at 8530 S. County Road 55, Cottonwood, Alabama (the "Property") owned by Arthur E. Clark and Barbara E. Clark (the "Clarks").

AmSouth Bank ("AmSouth") was the holder of a mortgage covering the Property owned by the Clarks, and Dovenmuehle Mortgage, Inc. ("Dovenmuehle") was the subservicer for AmSouth of the mortgage. In August 2003, Dovenmuehle requested that ZC Sterling, program manager for Empire, place lender placed flood insurance on the Property through Empire to protect AmSouth's interest in the mortgaged Property on the basis that evidence of satisfactory flood insurance on the Property had not been received. ZC Sterling, program manager for Empire, issued the lender placed flood insurance policy through Empire retroactive to June 10, 2003, with AmSouth as the named insured mortgagee and the Clarks as additional named insureds. [Exhibit 1]. Dovenmuehle, as subservicer of the mortgage for AmSouth, paid the $808.00 premium for the lender placed flood insurance policy, and this initial premium payment from Dovenmuehle, on AmSouth's behalf, was the only payment Empire received relating to this policy.

In June 2004, ZC Sterling, program manager for Empire, received a request from Dovenmuehle to cancel the lender placed flood insurance policy on the basis that the Property was not in a flood zone. ZC Sterling, program manager for Empire, cancelled, effective June 10, 2003, the policy and refunded to Dovenmuehle the entire $808.00 premium previously paid for the policy.

Neither ZC Sterling nor Empire make flood zone determinations and neither did so with respect to the Property owned by the Clarks. No claims were ever made on the lender placed flood insurance policy and neither ZC Sterling nor Empire received any funds from the Clarks for the policy."

Further, the Affiant sayeth not.

R. Mark Chapman

Sworn to and subscribed before me on this the _19th_ day of June, 2006.

Wendolyn M Bailey
Notary Public
(SEAL)                  My Commission Expires: Notary Public, Henry County, Georgia
                        My Commission Expires Jan. 28, 2010

# Exhibit 1
## to
# Affidavit of  R. Mark Chapman

Empire Fire and Marine Insurance Company
13810 FNB Parkway
Omaha, NE 68154-5202

Toll Free Customer Service: 800-333-4471
P O BOX 57046, IRVINE, CA 92619-7046

**Additional Named Insured Certificate**

Notification Date:  08/05/03

LOAN NUMBER:  3003072091

ADDITIONAL NAMED INSURED
ARTHUR E CLARK
BARBARA E CLARK
8530 S COUNTY RD 55
COTTONWOOD AL 36320



NAMED INSURED MORTGAGEE
AMSOUTH BANK
ITS SUCCESSORS AND/OR ASSIGNS
P O BOX 57046
IRVINE, CA 92619-7046

| POLICY NUMBER FLR470164921 | Dwelling | Amount of Insurance | Annual Premium |
|---|---|---|---|
| | | $ 85,000.00 | $ 808.00 |

**POLICY TERM:**
FROM 06/10/03    TO 06/10/04
☐ NOON    ☒ 12:01am
IF WE ELECT TO CONTINUE THIS INSURANCE, WE WILL RENEW THIS POLICY IF YOU PAY THE REQUIRED RENEWAL PREMIUM FOR EACH SUCCESSIVE POLICY PERIOD, SUBJECT TO OUR RATES, RULES AND FORMS IN EFFECT. YOU MUST PAY US PRIOR TO THE END OF THE CURRENT POLICY PERIOD OR ELSE THIS POLICY WILL EXPIRE.

Flood Deductible - per loss
   Located in a "V" zone or with elevation of lowest
   floor below the Base Flood Elevation (BFE)    $ 1,000

All Other Flood Losses    $ 750

PROPERTY LOCATION
8530 S COUNTY RD 55
COTTONWOOD AL 36320

| MUNICIPAL TAXES | Tax Code | $ 0.00 |
|---|---|---|
| OTHER TAXES | | $ 0.00 |
| | ANNUAL TOTAL CHARGES | $ 808.00 |

ENDORSEMENTS ATTACHED AND
FORMING A PART OF THE POLICY
RF1101 (0397),RF1201 (0397),

Subject to the terms and provisions of the Mortgage Service Program, Residential Property Mortgagee's Flood Policy, including but not limited to the Residential Flood Coverage Form attached hereto, it is agreed that the insurance applies to the property described above and to any person shown as an Additional Named Insured with respect to such property, subject to the following additional provisions:

(a) The Named Insured Mortgagee is authorized to act for the Additional Named Insured(s) in all matters pertaining to this insurance including receipt of Notice of Cancellation; and return premium, if any.
(b) The Named Insured Mortgagee is authorized to advance all funds to be recovered from the Additional Named Insured(s) for the insurance afforded.
(c) Loss, if any, shall be adjusted with and payable to the Named Insured Mortgagee and the Additional Named Insured(s), as their interests may appear, either by a single instrument so worded or by separate instruments payable respectively to the Named Insured Mortgagee and the Additional Named Insured, at the company's option.

DEDUCTIBLES: Please refer to the deductibles shown above for the coverage provided by this policy.

**THIS POLICY ONLY COVERS DWELLINGS. IT DOES NOT COVER YOUR PERSONAL PROPERTY.**

**For Customer Service questions, please call our toll free Customer Service Number at:
800-333-4471**

To report a claim, please contact our Claim Department at 1-800-237-6617

RF1101 0397

# Residential Flood Coverage Form

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

Throughout this policy, "you" and "your" refer to the "Named Insured Mortgagee" and the "Additional Named Insured" shown in the Declarations. "We", "our" and "us" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. "Base Flood" means the flood having one percent chance of being equaled or exceeded in any given year.

2. "Actual Cash Value" means the cost to repair or replace at the time of loss, less depreciation.

3. "Post-FIRM building" means a building for which the start of construction or substantial improvement occurred after December 31, 1974, or on or after the effective date of the initial Flood Insurance Rate Map (FIRM) for the community in which the building is located, whichever is later.

## COVERAGES

This insurance applies to the Described Dwelling Property for which an Additional Named Insured Endorsement has been issued, upon which a Covered Structure(s) is situated and which is not otherwise excluded.

1. **Covered Structures.**

   We cover:

   a. the dwelling on the Described Dwelling Property, used principally for dwelling purposes not to exceed four (4) living units including, but not limited to, individually owned townhouses or permanently situated mobile homes;

   b. structures attached to the dwelling;

   c. materials and supplies on or adjacent to the Described Dwelling Property for use in the construction, alteration, or repair of the dwelling or other structures on this location; and

   d. if not otherwise covered in this policy, building equipment and outdoor equipment used for the service of and located on the Described Dwelling Property.

2. **Property Not Covered.**

   a. Personal Property or contents of any kind.

   b. Fenced retaining walls, seawalls, swimming pools, bulkheads, wharves, piers, bridges, docks; other open structures located on or over water, including boat houses or similar structures or buildings into which boats are floated or moored.

   c. Land values, lawn, trees, shrubs or plants, signs, growing crops, or livestock; underground structures and equipment including wells, septic tanks or septic systems; those portions of walks, walkways, driveways, patios, and other surfaces, all of whatever kind of construction, located outside the perimeter, exterior walls of the Covered Structure.

   d. Buildings, including machinery and equipment which are part of the building, where more than 49 percent of the Actual Cash Value of such buildings is below ground, unless the lowest level is at or above the Base Flood elevation or the adjacent ground level by reason of earth having been used as an insulation material in conjunction with energy efficient building techniques.

   e. Aircraft, any self-propelled vehicle or machine and motor vehicles, including their parts and equipment, trailers on wheels and other recreational vehicles whether affixed to a permanent foundation or on wheels; watercraft, including their furnishings and equipment.

   f. Enclosures, contents, machinery, building components, equipment and fixtures located at an elevation lower than the lowest elevated floor of an elevated Post-FIRM building (except for the required utility connections and the footing, foundation, posts, pilings, piers or other foundation walls and anchorage system as required for the support of the elevated Post-FIRM building), including a manufactured (i.e., mobile) home; finished basement walls, floors, ceilings and other improvements to a basement having its floor subgrade on all sides (except for drywalls and sheetrock walls and ceilings, whether finished or unfinished, all only to the extent of replacing them with unfinished (i.e., nailed to framing but not taped or

Includes copyrighted material of Insurance Services Office, Inc, with its permission. Copyright, Insurance Services Office, Inc. 1988

fiberglass insulation) and contents, machinery, building equipment and fixtures in such basement areas; except that, as to this subparagraph (F), coverage is provided in basement areas and in areas below the lowest elevated floor of an elevated Post-FIRM building for sump pumps, well-water tanks, well-water tank pumps, oil tanks and the oil in them, cisterns and the water in them, natural gas tanks and the gas in them, pumps and/or tanks used in conjunction with solar energy systems, furnaces, hot water heaters, air conditioners, heat pumps and electrical junction and circuit breaker boxes; and coverage is also provided in basement areas and in areas below the lowest elevated floor of an elevated Post-FIRM building for stairways and staircases attached to the building which are not separated from the building by elevated walkways and for elevators and relevant equipment, except for such relevant equipment located below the base floor elevation if such relevant equipment was installed on or after October 1, 1987.

g.  A manufactured (i.e., mobile) home located or placed within a Federal Emergency Management Agency designated Special Flood Hazard Area that is not anchored to a permanent foundation to resist flotation, collapse, or lateral movement (i) by over-the-topor frame ties to ground anchors or (ii) in accordance with manufacturer's specifications or (iii) in compliance with the community's flood plain management requirements.

h.  Units or structures which are primarily containers, rather than buildings (such as gas and liquid tanks).

i.  A building newly constructed or substantially improved on or after October l, 1983, in an area designated as an undeveloped coastal barrier within the Coastal Barrier Resource System established by the Coastal Barrier Resources Act (Pub. L 97-348).

## PERILS INSURED AGAINST

We insure against all direct physical loss or damage to covered property by and from the peril of "Flood" as defined below:

"Flood" or "Flooding" means:

1.  A general and temporary condition of partial or complete inundation of normally dry land areas from:
    a.  The overflow of inland or tidal waters;
    b.  The unusual and rapid accumulation or runoff of surface waters from any source; or
    c.  Mudslides (i.e., mudflows) which are proximately caused by Flooding as defined above and are akin to a river of liquid and flowing mud on the surfaces of normally dry land areas, including the Described Dwelling Property, as when earth is carried by a current of water and deposited along the path of the current.

2.  The collapse or subsidence of land along the shore of a lake or other body of water as a result of erosion or undermining caused by waves or currents of water exceeding the cyclical levels which result in Flooding as defined in 1a above.

## PERILS EXCLUDED

1.  Loss caused by theft, fire, windstorm, wind, explosion, earthquake, land sinkage, land subsidence, landslide, destabilization or movement of land and consequential loss, including loss of income or profits, resulting from the accumulation of water in subsurface land areas, gradual erosion, or any other earth movement except such mudslides (i.e. mudflows) or erosion as is covered under the peril of "Flood".

2.  Loss caused by rain, snow, sleet, hail, water spray, freezing, thawing, the pressure or weight of ice or water sewer backup or seepage of water unless the property covered has been, for the same time, damaged by a "Flood".

3.  Water, moisture or mudslide (i.e., mudflow) damage resulting primarily from any condition substantially confined to the insured building or from any condition which is within the control of the Named or Additional Named Insured (including but not limited to design, structural or mechanical defects, failures, stoppages, or breakages of water of sewer lines, drains, pumps, fixtures, or equipment).

4.  Loss which is in progress as of 12:01 A.M. of the first day of the policy term.

5.  Loss from a "Flood" which is confined to the Described Dwelling Property on which your Covered Structure is situated, unless the "Flood" is displaced over two acres of the Described Dwelling Property.

6.  Loss caused by or contributed to in any manner due by your modification to the Described Dwelling Property on which the Covered Structure is situated which materially increased the risk of "Flooding". ,

7.  Loss caused intentionally by you or any member of your household.

Includes copyrighted material of Insurance Services Office, Inc, with its permission. Copyright, Insurance Services Office, Inc. 1988

8. Loss caused by or resulting from power, heating or cooling failure, unless such failure results from physical damage to power, heating or cooling equipment situated on the Described Dwelling Property where the Covered Structure is situated, caused by "Flood".

9. Loss caused directly or indirectly by (1) hostile or warlike action in time of peace or war including action in hindering, combating or defending against an actual, impending or expected attack, (a) by any government or sovereign power (de jure or de facto). or by any authority maintaining or using military, naval or air forces, or (b) by military, naval or air forces, or (c) by an agent of any such government, power, authority or forces, it being understood that any discharge, explosion or use of any weapon of war employing nuclear fission or fusion shall be conclusively presumed to be such a hostile or warlike action by such a government, power, authority or forces; (2) insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an occurrence;

10. Loss caused by nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by "Flood".

## OTHER COVERAGES

1. **Other Structures.** Subject to the provisions of this article, we cover other structures on the Described Dwelling Property, separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line or similar connection are considered to be other structures.

   We do not cover other structures:

   a. used in whole or in part for commercial, manufacturing or farming purposes; or

   b. rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

   The amount of insurance on other structures shall be limited to 10% of the dwelling coverage as an additional amount of insurance.



2. **Debris Removal.** Within the limits of your coverage, we cover any expense you incur as a result of removing debris of, on or from the Described Dwelling Property so long as the debris problem was directly caused by a "Flood", including the value of your own for and the labor of members of your household at prevailing Federal minimum wage rates.

3. **Loss Prevention Expenses.** We cover the reasonable expenses incurred by you for the purchase of (i) sandbags, including sand to fill them and plastic sheeting and lumber used in connection with them, (ii) fill for temporary levees, (iii) pumps, and (iv) wood, all for the purpose of protecting the Covered Structure due to the imminent danger of a "Flood" loss, including the value of your labor and the labor of members of your household at prevailing Federal minimum wage rates, in an aggregate amount up to the amount of $500. The policy's deductible amount, as indicated on the Additional Named Insured Endorsement, shall not be applied to this reimbursement, but shall be applied to any other benefits under the policy's coverage. For reimbursement under this article to apply, the following conditions must be met:

   (i) The insured property must be in imminent danger of sustaining "Flood" damage; and

   (ii) The threat of "Flood" damage must be of such imminence as to lead a person of common prudence to apprehend "Flood" damage; and

   (iii) A general and temporary condition of "Flooding" in the area must occur, even if the "Flooding" does not reach the insured property, or a legally authorized official must issue an evacuation order or other civil order for the community in which the insured property is located calling for measures to preserve life and property from the peril of "Flood".

## CONDITIONS

1. **Policy Period.** This policy applies only to loss which occurs during the policy period.

2. **Other Insurance.** If there is any other valid or collectible insurance which would attach if the insurance under this policy had not been effected, this insurance shall apply only as excess and in no event as contributing insurance and then only after all other insurance has been exhausted.

3. **Insurable Interest and Amount of Insurance.** Even if more than one person has an insurable interest in the Described Dwelling Property covered, we shall not be liable for:

   a. an amount greater than the interest of the persons insured under this policy; or

   b. more than the amount of insurance that applies, whichever is less.

Includes copyrighted material of Insurance Services Office, Inc, with its permission. Copyright, Insurance Services Office, Inc. 1988

mortgagee at the time of a loss, we shall be liable for no more than the Mortgagee's interest in the property at the time of loss.

The mortgagee's interest is represented by the mortgagor's unpaid balance, less unearned interest and finance charges, less unearned insurance premiums, less collection and foreclosure expenses, and less late charges and penalties added to the mortgagor's unpaid balance after the inception date of this policy.

4. **Concealment or Fraud.** We do not provide coverage if you have intentionally concealed or misrepresented any material fact or circumstance relating to this insurance. We do not provide coverage if you have acted fraudulently or made false statements relating to this insurance whether before or after loss.

5. **Your Duties After Loss.** In case of a loss to which this insurance may apply, you shall see that the following duties are performed:

   a. give immediate notice to us or our agent;

   b. protect the property from further damage, make reasonable and necessary repairs required to protect the property, and keep an accurate record of repair expenditures;

   c. exhibit the damaged property as often as we reasonably require;

   d. submit to signed statements and examinations under oath; and

   e. submit to us, within 60 days after we request, your signed, sworn statement of loss which sets forth, to the best of your knowledge and belief:

      (1) the time and cause of loss;

      (2) the interest of you and all others in the property involved and all encumbrances on the property;

      (3) other insurance which may cover the loss;

      (4) changes in title or occupancy of the property during the term of the policy; and

      (5) specifications of any damaged building and detailed estimates for repair of the damage.

6. **Loss Settlement.** Covered property losses are settled as follows:

   a. Buildings at replacement cost without deduction for depreciation, subject to the following:

      (1) We will pay the cost of repair or replacement, without deduction for depreciation, but not exceeding the smallest of the following amounts:

         (a) the amount of insurance under this policy applying to the Covered Structure;

         (b) the replacement cost of that part of the Covered Structure damaged for equivalent construction and use on the same premises; or

         (c) the amount actually and necessarily spent to repair or replace the damaged Covered Structure.

      If the full cost to repair or replace the damaged property is more than $1,000 or more than 5% of the amount of insurance for the Covered Structure, we will pay no more than the Actual Cash Value until actual repair or replacement is completed.

      You may disregard these replacement cost loss settlement provisions when making a claim. You may claim loss to Covered Structures on Actual Cash Value basis. If you do, you may make further claim within 180 days after the loss based upon and for any specific additional cost to you actually incurred within that period in replacing the damaged property on a replacement cost basis.

   b. Loss to the following types of property will be settled at the Actual Cash Value of the damaged property at the time of loss.

      (1) Structures that are not buildings.

      (2) Antennas, carpeting, awnings, and outdoor equipment defined as Covered Structures, all whether or not attached to buildings

      We will not pay more than the smallest of:

      (1) the cost to repair or replace the damaged property with property of like kind and quality;

      (2) the Actual Cash Value of the damaged property; or

      (3) the amount of insurance of this policy applying to the property.

7. **Salvage and Recoveries.** When, in connection with any loss covered by this policy, any salvage or recovery is received subsequent to the payment of such loss, the loss shall be refigured on the basis of what it would have been settled for had the amount of salvage or recovery been known at the time the amount of loss was originally determined. Any amounts thus found to be due any party, including us, shall be promptly paid or reimbursed.

8. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn statement of loss, we may repair or replace any part of the property damaged with equivalent property.

any other loss during the policy term which arises out of a separate occurrence of "Flood"; provided that all loss arising out of a continuous or protracted occurrence shall be deemed to constitute loss arising out of a single occurrence.

10. **Loss to a pair or set.** In case of loss to a pair or set, we may elect to:

   a. repair or replace any part to restore the pair or set to its value before the loss; or

   b. pay the difference between Actual Cash Value of the property before and after the loss.

11. **Glass Replacement.** Covered loss to glass shall be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

12. **Loss Payment.** We will adjust all losses with the Named Insured Mortgagee. Payment for loss will be made within 60 days after we reach agreement with the Named Insured Mortgagee, entry of a final court judgment, or the filing of an approved award with us. Loss will be made payable to the Named Insured Mortgagee and the Additional Named Insured as their interests appear, either by a single instrument so worded or by separate instruments payable respectively to the Named Insured Mortgagee and the Additional Named Insured, at our option. No coverage will be available to any mortgagee other than that shown as the Named Insured Mortgagee on the Declarations page of this policy.

13. **Appraisal.** If the Named Insured Mortgagee and we fail to agree on the actual cash value or amount of loss, either party may make written demand for an appraisal. Each party will select an appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, the Named Insured Mortgagee or we can ask a judge of a court of record in the state of the Described Dwelling Property to select an umpire.

   The appraisers will appraise the loss, based on the method of payments specified in the policy for each item. If the appraisers submit a written report of an agreement to us, that amount will be the Actual Cash Value or amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award by any two will determine the amount of loss.

   Each party will pay the appraiser it chooses and his expenses, and equally pay expenses for the umpire and all other expenses of the appraisal.

14. **Our Rights** (Subrogation). In the event of any claim under this policy, we are entitled to all your rights of recovery against another person. You must sign and deliver to us any legal papers relating to that recovery, do whatever else is necessary to help us exercise those rights and do nothing after loss to prejudge our rights. When you have made a claim under this policy and also recover from another person, the amount recovered from the other person shall be held by you in trust for us and reimbursed to us to the extent of any damages paid by us under this policy.

15. **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions and the action is started within one year after the date of loss.

16. **Abandonment of Property.** You must take all reasonable steps to protect the property which a prudent interested party would take in the absence of this or other insurance. We need not accept any property abandoned by you.

17. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.

18. **Cancellation.**

   a. Coverage under this policy shall automatically and without prior notice, cancel when the Named Insured Mortgagee no longer has an interest in the Described Property or when the Named Insured Mortgagee has been provided with another policy that meets the requirements of the Named Insured Mortgagee as set forth in the mortgage agreement applicable to the Described Property.

   b. This policy may also be canceled by the Additional Named Insured by returning it to us or notifying us in writing of the date cancellation is to take effect

   c. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the declarations.

   Proof of mailing will be sufficient proof of notice.

   (1) We may cancel this policy by mailing notice of cancellation to the Additional Named Insured at the

days prior to the effective date of the cancellation.

(2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

(3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

    (a) if there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy, or

    (b) if the risk has changed substantially since the policy was issued.

This can be done by letting you know at least 30 days before the date cancellation takes effect.

(4) When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

d. When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

e. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**19. Non-Renewal.** We may elect not to renew this policy. We may do so by delivering to the Additional Named Insured, or mailing to the Additional Named Insured at the mailing address shown on the Additional Insured Endorsement, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

**20. Liberalization Clause.** If we adopt any revision which would broaden the coverage under this policy without additional premium within 60 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

**21. Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination shall not waive any of our rights. No course of conduct nor any indulgences, waivers, extensions, forebearances, non-enforcement of policy conditions, or the like, extended at or over any time or from time to time by the Company to the Named Insured Mortgagee or anyone shall waive, nullify, or modify any policy provision as to any other occasion or waive, nullify, or modify any other policy provision. 

**22. Assignment.** Assignment of this policy shall not be valid unless we give our written consent.

Includes copyrighted material of Insurance Services Office, Inc, with its permission. Copyright, Insurance Services Office, Inc. 1988