# IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

# MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

ARTHUR EARL CLARK and wife,     *
BARBARA E. CLARK,               *
                                  *
     Plaintiffs,            *   CIVIL ACTION NO.
                          *   1-05CV747-MHT-VPM
     v.                    *
                          *
AMSOUTH MORTGAGE COMPANY,    *
INC., a corporation,        *
et al.,                    *
                          *
     Defendants.            *

## PLAINTIFFS' MEMORANDUM OF AUTHORITIES IN OPPOSITION TO DEFENDANTS AMSOUTH AND DOVENMUEHLE'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs, by counsel, respectfully submit their Memorandum of Authorities in Opposition to AmSouth's and Dovenmuehle's Motion for Summary Judgment filed June 14, 2006. AmSouth and Dovenmuehle will hereinafter be referred to as "the Banks."

Plaintiffs originally filed an eight count complaint in the Alabama State Court which was removed by Defendants to the United States District Court. The counts are: COUNT I(Breach of Contract), COUNT II(Unjust Enrichment), COUNT III (Conversion), COUNT IV(Negligence), COUNT V(Breach of Duty to Third Party Beneficiary), COUNT VI(Fraud), COUNT VII(Violation of Fair Credit Reporting Act) and COUNT VIII(Violation of the Fair Debt Collection Practices Act).

The Banks' Narrative Statement of Undisputed Facts in their Brief in Support of Motion for Summary Judgment contains several allegations that are in dispute. On page 4, paragraph 9 the Banks state Geotrac submitted to DMI a Federal Emergency Management Agency Standard Flood Hazard Determination ("SFHD") indicating that Plaintiffs' home was located in a Special Flood Hazard Area ("SFHA"). Geotrac refutes this claim in its Narrative Statement of Undisputed Facts of its Motion for Summary Judgment on page 2, lines 13 through 15 and 17. Geotrac admits "The current FEMA map when compared to the Houston County tax maps did in fact show that a structure located on the Plaintiff's property was in a flood zone." The Affidavit of Mark Schnellinger attached to Geotrac's Motion stated on page 2 lines 9 through 11, "As a result, Geotrac informed Dovenmuehle that, according to the FEMA and Houston County tax maps, one structure located on the Clark's property was indeed in a flood zone." Geotrac claims it merely supplied information and it was the bank and not it that negligently identified plaintiff's home as being located within a special flood hazard zone.

In paragraph 16 of The Banks' Narrative Statement of Undisputed Facts in their Brief in Support of Motion for Summary Judgment, Plaintiffs are said to have refused to purchase flood insurance because they were not provided with proper documentation. This is disputed. In reliance on the Banks'

assertions that Plaintiff's property was in a flood zone, Plaintiffs sought flood coverage with ALFA Insurance Company. The ALFA agent informed them that they had to have additional documentation concerning the flood level threat to purchase it. (See Exhibit "A", A. Clark's Deposition, 346:12-16)

The Banks further argue they were only complying with federal law. (The Banks' Narrative Statement of Undisputed Facts in their Brief in Support of Motion for Summary Judgment paragraph 18.) All of the Defendants raise the issue of the application of the National Flood Insurance Act, 42 U. S. C. § 4001, *et seq.* (NFIA) This law applies only when the property in question "has been identified by the Director as an area having special flood hazards." (42 U. S. C. § 4012(a) lines 4 and 5.) In the instant case the Director has never done so. (See The Banks' Narrative Statement of Undisputed Facts in their Brief in Support of Motion for Summary Judgment paragraph 34.) Therefore, the NFIA has no bearing on this case. To suggest otherwise is a sham.

The Banks rely on the Deposition of Earl Clark  to declare the FEMA and Houston County tax maps to be in error. Mr. Clark is not an expert in these fields and is not qualified to make such determinations. (See Exhibit "A", A. Clark's Deposition, 126:22 through 127:6; 128:1-3.)

In paragraph 32 of their Brief, the Banks attempt to place blame on FEMA and Houston County, Alabama for what they earlier

described as an inaccurate determination by Geotrac.(See The Banks' Narrative Statement of Undisputed Facts in their Brief in Support of Motion for Summary Judgment page 2 line 13.) This argument fails under scrutiny. The maps only provided factual information and did not identify which structure was Plaintiffs' home. The maps showed more than one structure on the property. (See Exhibit "A", A. Clark's Deposition, 186:7-17; 187:1-5.) Under The Banks' argument, lenders have no duty to properly identify structures within a SFHZ if they can find any structure on a parcel of land with any part of it declared to be within a special flood hazard zone. Following this logic would result in any or all structures on that parcel of land being subject to forced placed insurance at the whim of a lender, while that lender enjoys complete immunity for its actions, and leaving the home owners with no remedy. This is synonymous with the shoplifter, who only after being caught, agrees to pay and claims he made a "good faith effort" to do what was required and thus should not be prosecuted. There was no good faith effort on AmSouth or Dovenmuehle to identify the mistake or correct it until after Plaintiffs were damaged, even though Plaintiffs repeatedly pleaded for information and assistance in resolving this dispute.

The Defendant Banks would have this Court believe that the FEMA and Houston County maps were in error. The maps were never

in error. The error was in their interpretation of the events depicted on the maps. Because there were two structures on the map, one in a flood zone and one quite obviously not, Geotrac and/or Amsouth and/or Dovenmuehle negligently identified Plaintiffs' home as the one *in* the flood zone. Yes, Mr. Clark immediately recognized his house was not in a flood zone. No, it was not immediately corrected. It was corrected only after the passage of more than ten months of hard work, mental anguish and near financial ruin of the Clark family. (See Exhibit "A", A. Clark's Deposition, 250:5-23; 255:1-23.)

The Banks submission concerning the Standard of Review is not being contested. However, Plaintiff relies on *Custer v. Homeside Leasing, Inc.*, 858 So. 2d 233, 241 (Ala. 2003) for the applicable standard of review which stated, The "Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant." In *Allstate Insurance Co. V. Eskridge*, 823 So.2d 1254,(Ala. 2001), the standard was explained thusly,

> Our standard for review of a trial court's ruling on a
> motion for a judgment as a matter of law is settled:
> "When reviewing a ruling on a motion for a judgment as
> a matter of law, this Court uses the same standard the
> trial court initially used in granting or denying the
> motion. *Palm Harbor Homes, Inc. v. Crawford,* 689 So.2d
> 3 (Ala.1997). Regarding questions of fact, the ultimate
> question is whether the nonmovant has presented
> substantial evidence to allow the factual issue to be
> submitted to the jury for resolution. *Carter v.*

> *Henderson,* 598 So.2d 1350 (Ala.1992). See also §
> 12-21-12, Ala. Code 1975, and *West v. Founders Life
> Assurance Co. of Florida,* 547 So.2d 870 , 871
> (Ala.1989). A motion for a judgment as a matter of law
> 'is properly denied where there exists any conflict in
> the evidence for consideration by the jury.' *Cloverleaf
> Plaza, Inc. v. Cooper & Co.,* 565 So.2d 1147 , 1149
> (Ala.1990). 'In reviewing a ruling on a motion for a
> [judgment as a matter of law], this Court views the
> evidence in the light most favorable to the nonmovant
> and entertains such reasonable inferences from that
> evidence as the jury would have been free to draw.'
> *Daniels v. East Alabama Paving, Inc.,* 740 So.2d 1033,
> 1037 (Ala.1999)."

*Id.*, at 1258.

Plaintiffs do not rely on any federal remedy, code, rule or regulation as a basis for their state law claims of Breach of Contract, Unjust Enrichment, Conversion, Negligence, Breach of Duty to Third Party Beneficiary and Fraud against the Banks. These Defendants are asking this Court to declare a cloak of immunity to protect their non-government related actions. The court addressed this very danger in *Newton v. Capital Assurance Company, Inc.* 245 F.3d 1306 (11th Cir. 2001), a case concerning the question of whether sovereign immunity principles concerning prejudgment interest apply to a flood insurance provider. The *Newton* court ruled that the insurance company was entitled to the immunity because to hold otherwise would result in exposing the federal government to become responsible for judgment. That court, like all the others cited by the Banks, narrows the application of their rulings. The language of the Court in

*Newton, supra,* explains the need for narrow interpretation as follows:

> . . . Congress should be able to implement federal programs using private entities rather than government agencies without necessarily waiving protection of program funds under the no-interest rule. We also recognize, however, that the rule as applied to private entities should be a narrow one applicable only when the interest charge really is, for all relevant purposes, directly against the federal government. To conclude otherwise would allow private entities to use the no-interest rule to protect their purely private concerns rather than public programs.

*Id.,* at 1306.

In footnote 19 of *Ayres v. General Motors Corp.*, 234 F.3d 514 this Circuit followed the reasoning of the 5th Circuit in *Lowe, supra* and declared the lack of a private right under a Federal Act does not preclude them from acting under a state law cause of action.

The purpose of the National Flood Insurance Act, as defined in 42 U.S.C. § 4001 is to provide a federally subsidized flood insurance program for the benefit of the public. In footnote 1 to *Custer v. Homeside Leasing, Inc.*, *supra,* the court addresses this issue and states, "The National Flood Insurance Act, 42 U.S.C. § 4001 et seq., requires homeowners with mortgages on property in designated flood zones to carry flood insurance on that property. It also authorizes a mortgagee, in the event the mortgagor fails to procure flood insurance on his or her own accord, to obtain flood insurance for the mortgaged property and to charge the cost

back to the mortgagor, thereby 'force-placing' the insurance."
*Id.,* at 236. The act does not grant immunity to the lender or its
agents for acts that would be considered a crime or a tort under
state or federal law. *Custer v. Homeside Lending, Inc.*, *supra* at
244, stated, "The court concluded that no implied federal private
cause of action existed **under the circumstances of the case**.
[Emphasis added] . . . in fact the primary purpose of the flood-
program legislation is to reduce the massive burden on the
national treasury resulting from escalating federal expenditures
for flood-disaster relief assistance." That Court continues its
analysis by declaring, "When a court construes a statute,
'[w]ords used in [the] statute must be given their natural,
plain, ordinary, and commonly understood meaning, and where plain
language is used a court is bound to interpret that language to
mean exactly what it says." *Id.*, at 245. Plaintiffs interpret
this to mean if congress wished to establish immunity it would
have expressly done so.

Plaintiffs' claim have been recognized by Alabama statute or
common law. The Banks correctly stated one finding of the Court
in *Till v. Unifirst Federal Savings and Loan Association*, 653
F.2d 152. But again what they cited refers to a case where
Plaintiffs have relied on the NFIA to create a private remedy or
cause of action, and the remaining state common law claims were
not addressed in Defendants' brief. The Plaintiffs in the case at

bar have not cited any federal claims other than those under Title 15 which expressly provide for a private cause of action.

> The district court held that no private right of action existed under the federal statutes and that all other claims presented by appellants failed since they were dependent upon implication of the private right of action in federal law. We affirm the district court's holding that the federal flood insurance statutes imply no private right of action cognizable in federal law. However, we vacate dismissal of the state common law causes of action and direct that they be remanded to the state court from which the suit originated.

*Till*, *supra*, at 154.

The Fourth Circuit Court without question failed to find that the NFIA provided any immunity for defendants as contemplated herein by the Banks. The court went on to say, "this court was compelled to determine the effect of a federal statute on state law due to diversity jurisdiction. There, we held that under Alabama law a plaintiff could recover in a wrongful death action for violations of the National Traffic and Motor Vehicle Safety Act of 1966. Lowe v. General Motors Corp., supra, 624 F.2d at 1379-80." *Till, supra, footnote* 24, page 161.

As to COUNT I(Breach of Contract) it is undisputed plaintiffs were and still are in a direct contractual relationship with AmSouth. Plaintiffs' relationship with Dovenmuehle is not so direct. But, such a relationship is not required. "Alabama law is clear to the effect that one for whose benefit a valid contract has been made, although that person is

not a party thereto and does not furnish any consideration therefor, may maintain an action on the contract against the promissor." *Harris V. the Board of Water and Sewer Commissioners of the City of Mobile, a Public Corporation*, 320 So.2d 624, 294 Ala. 606, 611. (Ala. 1975). It is undisputed the Banks are in a contractual relationship to service the mortgage on Plaintiffs' property held by AmSouth. (Defendants' brief page 3, paragraph 6.)

COUNT IV Negligence is based on Alabama common law. The Common law is as follows:

> A complaint for the breach of a contract in not performing the obligation there expressed, or not doing it in the way specified, is not in tort, and cannot be unless the non-performance is by reason of a failure to exercise the care required by law in attempting to perform. If defendant omits to enter upon the duty to perform, however negligent that might be, that is not a negligent performance and not a tort. But if he does undertake to perform, his performance may be negligent, giving rise to a tort.

*Sloss Sheffield Steel & Iron Co. v. Wilkes,* 231 Ala. 511, 165 So. 764, 100 A.L.R. 385.

Furthermore, our Plaintiffs need not establish to what degree each defendant acted to harm them. The Court in *Williams v. Woodman*, 424 So. 2d 611, 613 (Ala. 1982) stated, "The following rules of law are well settled and unchallenged: Where one is guilty of negligence and this negligence concurs or coalesces with the negligence of another, and the two combine to

produce an injury, each is liable for the damages, and the negligence of each is considered the proximate cause of the injury producing the damages. *Aplin v. Dean,* 231 Ala. 320, 164 So. 737 (1935)".

As to COUNT V BREACH OF DUTY TO THIRD PARTY BENEFICIARY, a service agreement existed between Geotrac and Dovenmuehle Funding Inc. As this agreement was included as Exhibit "A" to Geotrac's Motion for Summary Judgment, we may infer its relevance to this case. Under the heading, "Duties of Geotrac" is listed "Provides Guarantees for accuracy of all FZDs," among other duties. The elements establishing a third-party-beneficiary entitlement were discussed at great length by the court.

> In support of their argument, the Custers refer the Court to *Holley v. St. Paul Fire & Marine Ins. Co.,* 396 So.2d 75 (Ala.1981). In that case, this Court, after considering the surrounding circumstances of the parties to the contract, as allowed by *Anderson v. Howard Hall Co.,* 278 Ala. 491, 179 So.2d 71 (1965), and *Zeigler v. Blount Brothers Construction Co.,* 364 So.2d 1163 (Ala.1978), concluded that a complainant could be a third-party beneficiary to a contract even though the complainant was not specifically considered in the contract.
>
> To establish a claim of third-party-beneficiary entitlement, a claimant must show: "'"(1) that the contracting parties intended, at the time the contract was created, to bestow a direct benefit upon a third party; (2) that the complainant was the intended beneficiary of the contract; and (3) that the contract was breached."'" *H.R.H. Metals, Inc. v. Miller,* 833 So.2d 18, 24 (Ala.2002) (quoting *McGowan v. Chrysler Corp.,* 631 So.2d 842, 848 (Ala.1993)). At the outset, we note that the Custers have not shown how the servicing agreement between Homeside and WNC, as opposed to the "Policy of Insurance Contract," applies

> to their case, in light of the fact that the Custers'
> policy was force-placed under the latter agreement.

*Custer v. Homeside*, supra at 248.

Geotrac stated in its amended answer filed in this case that it "advised Dovenmuehle that a structure which was located on the parcel of land made the subject of a flood certification performed by Geotrac was located in Flood Zone A. . . and that one of the structures located on the parcel of land made the subject of a flood certification performed by Geotrac was located outside Flood Zone A." Geotrac also admitted a contract existed between Geotrac and defendant Dovenmuehle, and under the terms of that contract Geotrac provided said information. The structure and parcel was identified by one or more of the defendants as being that of Plaintiffs', more specifically their home. It is undisputed that flood insurance was placed on this home against the expressed objections of the plaintiffs.

Dovenmuehle was contracted to service the mortgage between AmSouth and Plaintiffs. Dovenmuehle contracted with Geotrac to identify secured real estate in special flood hazard areas. (Defendants' Brief Page 3 par's. 6 and 7.) This provides the existence of either a direct or indirect contractual relationship between these parties. As a direct result of these contracts certain benefits would fall to plaintiffs, the lenders, insurance companies, the U. S. Government and the general public. "Section

4012a is concerned with the risk to the pulic treasury created by federally backed or regulated loans for real property that are not protected by adequate flood insurance." *Till v. Unifirst Federal Savings and Loan Association*, 653 F.2d 152, 159 (5th Cir. 1981.) These Defendants argue "NFIA cannot be used to create a duty giving rise to common law misrepresentation." (Defendants' brief page 12, lines 17 & 18.) Plaintiffs do not dispute that statement as it is applied in the cases quoted. Those case are distinguishable from the case at bar. Plaintiffs do not rely on the NFIA as did the plaintiffs in the cases quoted by Defendants.

In *Harris v. Board of Water & Sewer Commissioners of the City of Mobile*, 320 So.2d 624, 294 Ala 606, 611 the court again states, "Alabama law is clear to the effect that one for whose benefit a valid contract has been made, although that person is not a party thereto and does not furnish any consideration therefor, may maintain an action on the contract against the promissor."

Next, we address the basis for Plaintiffs' COUNT VI (FRAUD) "The elements of fraud are: (1) a misrepresentation of a material fact, (2) made willfully to deceive, recklessly, without knowledge, or mistakenly, (3) that was reasonably relied on by the plaintiff under the circumstances, and (4) that caused damage as a proximate consequence." *Allstate Insurance Co. V. Eskridge*, Ibid. Plaintiffs have already established the misrepresentation

that Plaintiffs' home was in a flood zone. Plaintiffs contend they would not have tendered the additional payments they made.(See Exhibit "C".) Plaintiffs were forced to make additional payments under protest, (Exhibit "EA, Deposition of A. Clark, 343:18-344:5 and Exhibit "C".) Plaintiffs also were forced to hire and pay experts to get the flood zone determination changed. Exhibit "B", Affidavit of A. Clark, par. 51 and Exhibit "D").

The cases presented by the Banks in support of their motion deal with three fact patterns: 1. Persons who suffer damages from floods that have not been identified and/or placed on notice that they are in a special hazard flood zone and are seeking to place the Government and/or lender in the place of an insurer; 2. Persons who are purchasing property in a special hazard flood zone who have force placed insurance and dispute the amount of coverage; and 3. Persons who rely on previous flood zone determinations to establish value of property and seek compensation from others due to their failure to notify the purchaser of the flood zone risk prior to purchase. The Banks admit Plaintiffs' case is not synonymous with any of the fact patterns in the cited cases.

The case at bar deals with the issue of the force placing of flood insurance by a bank, with an affiliated insurance company based on a false and negligent assertion that the property was in a flood zone, by a contracted agent of the bank. Plaintiff's

property is not, nor was it ever in a flood zone; therefore the provisions of the National Flood/Disaster Act, 42 U.S.C. § 4104(a), never apply.

The Banks rely heavily on cases from other Circuits and State Courts, as this Circuit as yet to address the issues put forth in the case at bar and does not really need to now. The cases cited by the Banks do not answer the issue at bar; *i.e.* Does the National Flood Insurance Program Act grant immunity to Lending Institutions and/or their third party contractual agents when they force place flood insurance on borrower's property based on negligent identification of that property as being in a designated special hazard flood zone? In the instant case, the Banks and their agent Geotrac negligently placed Plaintiffs house in a flood zone when it was not. They then obtained money from plaintiffs they had no right to. Now, all of these Defendants are trying to create a smoke screen of Federal law to mask what they have done. As all of the defendants are acting in conjunction with one another in this scheme, and Plaintiffs are under no duty to identify to what degree any of the defendants acted as to the overall scheme. Each defendant can be held severally and individually liable for the injuries and damages they caused and/or to which they contributed. *Williams v. Woodman*, supra at 613.

There are no Eleventh Circuit cases on point; however *Till v. Unifirst,* supra is controlling in this Circuit. That case leaves no doubt that the mere existence of a Federal Act does not grant immunity. In fact, the Federal Act can be used to establish an element of a state law claim.

In *Gowens v. Stewart*, 2006 So.2d (1041341),(Ala. 2006)the Court dealt with the same general issue of whether conduct falls within the scope of a statute which would bestow absolute immunity. In that case as in this case, the defendant raised the defense of immunity.

> Actors whose conduct falls within the scope of § 26-14-9 are entitled to "absolute immunity." 585 So.2d at 886. However, "mere compliance with § 26-14-9 is not an automatic grant of immunity," because "allegations of injury or damage not related to the reporting of the suspected child abuse" are outside the scope of the statute. 585 So.2d at 886. See Harris v. City of Montgomery, 435 So.2d 1207 (Ala. 1983). ... The plaintiffs concede that § 26-14-9 could, under some circumstances, immunize DHR employees. They contend, however, that this is not such a case, because, they insist, they have not sued Gowens for reporting suspected child abuse, but for his alleged failure "to follow mandatory regulations and policies long after receiving reports of abuse from the hospital." Plaintiffs' brief, at 47. Thus, they contend, Gowens's conduct in this case is outside the scope of § 26-14-9. We agree.

*Gowens V. Stewart*, supra, under the heading of 1. Statutory Immunity.

The conduct of The Banks is not contemplated by the National Flood Insurance Act, and thus its conduct is outside any immunity

deriving from the Act. Neither statutory nor case law grants unlimited immunity to these defendants. The claim that any defendant has a right under federal law to force place flood insurance only comes into existence when the subject property is in a flood zone. NFIA neither creates a shield for the extortion of persons such as these Plaintiffs nor does it exculpate them. The cases cited by the Banks limit their decisions to the specific fact patterns of each respective case. Each case quoted by the Banks precludes a private remedy/action when it is based on one of two issues. *i.d.*, how the amount of insurance required and/or authorized by the act is determined; and, does the act cause the Bank or the Federal government to become an insurer against loses due to flooding or loss of property value by the property later being identified as being in a flood zone? In each of the Banks' cited cases the plaintiffs therein cite the National Flood Act as the legal basis for their claims and/or remedies. It is clear Congress never expressly provided such immunity as asserted by the Banks, and the Court is not at liberty to infer it.

"It is axiomatic that, a duty of care can arise from a statute *Carter v. Chrysler Corp.*, 743 So.2d 456 , 463-64 (Ala. Civ. App. 1998). A legal duty can be created under a myriad of circumstances.

"A legal duty is 'an obligation arising from a contract of the parties or the operation of the law.' Black's Law Dictionary 804 (5th ed. 1979).

"A legal duty to exercise care, therefore, arises where the parties are bound by contract, Pugh v. Butler Telephone Co., 512 So.2d 1317 (Ala. 1987), or where the obligations are 'expressly or impliedly imposed by statute, municipal ordinance, or by administrative rules or regulations, or by judicial decisions.' 57 Am. Jur. 2d, Negligence § 36 at 382 (1988)." King v. National Spa & Pool Inst., Inc., 570 So.2d 612 ,614 (Ala. 1990) (emphasis added). See also Thompson v. Mindis Metals, Inc., 692 So.2d 805 , 807 (Ala. 1997) ("A legal duty arises either from the common law or from a statute."). "'The existence of a duty is a question of law to be determined by the ... court.'" Wal-Mart Stores, Inc. v. Smitherman, 872 So.2d 833 , 837 (Ala. 2003) (quoting Ex parte Farmers Exch. Bank, 783 So.2d 24 , 27 (Ala. 2000)). See also State Farm Fire & Cas. Co. v. Owen, 729 So.2d 834 (Ala. 1999).

*Gowens*, supra under the heading B. Duty.

The Courts discussion of the creation of special relationships under 42 U.S.C. §4104(B)(d) restricts such limited reliance "only to the extent such person guarantees the accuracy of the information." This code section must be taken as a whole and should not be taken out of context. The language of a subpart derives its application from the whole. Footnote 3 in *Cruey v. First American Flood Data Services, Inc.,* 174 F.Supp2d 525 (E.D. Ky. 2001) states, "The protection afforded by the statute does not amount to blanket immunity. Rather, the protection is limited to determination made not more than seven (7) years before the date of the transaction, and there are several exceptions."

The Banks did not specifically address Counts VII (Violation of Fair Credit Reporting Act) and VIII (Violation of the Fair Debt Collection Practices Act). Plaintiffs payments were not applied timely toward their account as required by 15 USC Sec. 1666(c). 15 USC Sec. 1640 provides for damages including actual loses, costs and attorney fees. These Defendants did claim on page 2 of their Brief that Plaintiff's account has been fully reviewed, analyzed, corrected and that they refunded Plaintiffs' account. Assuming Defendants' assertion to be true still would not remove the damages of the Plaintiffs' loss of use of their money for the time it was held by the Banks improperly. Plaintiffs' account has not been placed back into the position it would have been if it had not been for the improper conduct of the Defendants. (See exhibit "G", Affidavit of Danny McCallister.)

The Banks made false reports to credit reporting agencies that negatively effected Plaintiffs' credit and violated 15 USC 1692(e) in that they failed to communicate that the negative credit information was being disputed. (Exhibit A., Deposition of A. Clark 228:10-17 and exhibit "E".)

Plaintiffs have not brought any action in this case under any section of Title 42 United States Code. The Banks' arguments that Title 42 establishes no private remedy is groundless.

Plaintiffs' claims against this defendant are based on Alabama tort law and Title 15 USC.

Plaintiffs do not contend they are entitled to any protections afforded by the NFIA. Instead they simply insist NFIA does not give Defendants a license to commit criminal and/or tortuous acts against person similarly situated as the Plaintiffs and then claim the blanket cloak of immunity the Newton Court cautioned against. (Newton v. Capital Assurance Co., Inc., Supra.)

Plaintiffs' credit, health, and finances have been harmed by Defendants' acts. Their account with AmSouth bank still has not been fully credited and they are entitled to an award of damages against each defendant jointly and severable.

CONCLUSION: The entire thrust of the Banks' and Geotrac's argument is that the NFIA protects lenders that force place flood insurance on structures within a SFHA; the lender erroneously identified Plaintiffs' home as being within a SFHA; therefore, the immunities and protection of NFIA apply to the lender. This is in its most elementary form an illogical syllogism. The appropriate syllogism is that NFIA protects lenders that force place flood insurance coverage on structures within a SFHA; Plaintiffs home is not within a SFHA; therefore, lenders that force place flood insurance on Plaintiff's home are not protected

and immunized by NFIA. We urge this Court to reach the same conclusion.

The Banks have failed to meet their burden of showing there is no genuine issue of material fact and its Motion for Summary Judgment is due to be denied.


Respectfully submitted this the 30th  Day of June, 2006.


/s/Clifford W. Jarrett
Clifford W. Jarrett (JAR004)
Attorney for Plaintiffs
424 South Oates Street Suite #3
Dothan AL 36301
(334)702-0777

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2006, I electronically filed the forgoing with the Clerk of the Court using CM/ECF system which will send notification of such filing to the following: Joseph E. Stott, Esq., George W. Walker, III, Esq., Thomas W. Thagard, III, Esq., and John David Collins, Esq. and I hereby certify that I have mailed by United States Postal Service the documents to the following Non-CM/ECF participants: NONE.

/s/Clifford W. Jarrett
Clifford W. Jarrett
Of Counsel