# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| ARTHUR EARL CLARK AND BARBARA E. CLARK, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| AMSOUTH MORTGAGE COMPANY, INC., et al. | ) ) ) ) |
| Defendants. | ) |

CIVIL ACTION NUMBER
1:05-cv-00747-MHT-VPM

## SUPPLEMENTAL BRIEF IN SUPPORT MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS AMSOUTH BANK AND DOVENMUEHLE MORTGAGE, INC.

THOMAS W. THAGARD, III
JOHN DAVID COLLINS

ATTORNEYS FOR DEFENDANTS
AMSOUTH BANK AND DOVENMUEHLE
MORTGAGE, INC.

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
2400 AMSOUTH/HARBERT PLAZA
1901 SIXTH AVENUE NORTH
BIRMINGHAM, ALABAMA 35203-2618
TELEPHONE: 205-254-1000
FACSIMILE: 205-254-1999

01378177.1

## I.   INTRODUCTION

On June 14, 2006, Defendants AmSouth Bank ("AmSouth") and Dovenmuehle Mortgage, Inc. ("DMI") moved this Court for summary judgment as to all claims asserted in Plaintiffs' Complaint on the grounds that Plaintiffs' claims are foreclosed and barred by the National Flood Insurance Act, 42 U.S.C. §§ 4001, et seq. ("NFIA") which provides, in pertinent part, that federally regulated lenders and loan servicers "**shall not be held liable**" for relying upon flood determinations prepared by third-party determination companies. Id. § 4012a(e)(2). See also Cruey v. First American Flood Data Services, Inc., 174 F.Supp.2d 525 (E.D. Ky 2001) (recognizing that NFIA § 4014b "amounts to an *express denial* of a cause of action by the borrower against the lender.") (emphasis in original). Because Plaintiffs' readily acknowledge that all of their claims relate to and arise out of the purchase of lender-placed flood insurance (A. Clark Depo. at p. 158, l. 3-9; Complaint ¶ 1), those claims fall squarely within the broad grant of immunity set forth in NFIA § 4014b.

DMI and AmSouth submit this supplemental brief to demonstrate that, even in the absence of NFIA immunity, no genuine issue of material fact exists as to the merits of Plaintiffs' claims. Indeed, as discussed in further detail below, all of Plaintiffs' claims either lack support in the evidentiary record or are not cognizable under controlling law. Furthermore, Plaintiffs' own accountant concedes that all charges, fees and advancements associated with the purchase of flood insurance were refunded to their mortgage account over one year before this lawsuit was filed. (Ex. G to Plaintiffs' Opposition.) Therefore, Plaintiffs have not been damaged.

For these reasons, and as stated in further detail below, DMI and AmSouth are entitled to summary judgment on all of Plaintiffs' claims.

## II.   STATEMENT OF UNDISPUTED FACTS

DMI and AmSouth hereby incorporate by reference undisputed facts 1-37 set forth in their June 14, 2006 Memorandum of Law in Support of Motion for Summary Judgment. To avoid duplication, Defendants will not restate those facts herein.

## III.   LAW AND ARGUMENT

### A.   Plaintiffs' FCRA Claim Fails Because There Is No Evidence That Defendants' Received Notice Of Dispute From A Credit Reporting Agency

Plaintiffs' claim in Count VII of the Complaint that AmSouth and DMI violated the reinvestigation procedures contained in 15 U.S.C. § 1681s-2(b). Under that section, once a furnisher of information receives notice from a credit reporting agency pursuant to § 1681i(a)(2), it has thirty (30) days to investigate the disputed information, review all information provided by the credit reporting agency, report the results of the investigation to the credit reporting agency that provided notice of the dispute, and report any findings of incomplete or inaccurate information to other agencies. 15 U.S.C. § 1681s-2(b).

As the text of the statute makes clear, however, the reinvestigation procedures are triggered only when the creditor receives notice <u>from a consumer reporting agency</u>, not the consumer. <u>See</u> 15 U.S.C. § 1681s-2(b)(1). Therefore, where the furnisher of information (i.e. DMI) does not receive proper notice of a dispute from the consumer reporting agency, the consumer's FCRA claim for violations of § 1681s-2(b) necessarily fails. <u>See</u> <u>Young v. Equifax Credit Info. Servs. Inc.</u>, 294 F.3d 631, 639-40 (5th Cir. 2002).[1]

---

[1] The scope of furnisher duties was expanded in December 2003 by the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"), Pub. L. No. 108-159, 117 Stat. 1952. However, the amendments relating to a consumer's ability to dispute information directly with a furnisher of information (§ 1681s-2(a)(8)) did not become effective until December 1, 2004, several months after Plaintiffs' submitted their dispute to DMI/AmSouth. <u>See</u> 16 CFR 602.1 (c)(3). Moreover, both before and after FACTA amended 15 U.S.C. § 1681s-2(c), it included an exemption from private actions for failure to comply with 15 U.S.C. § 1681s-2(a). <u>See also</u> <u>Beattie v. Nations Credit Fin. Servs. Corp.</u>, 69 Fed. Appx. 585, 591 (4th Cir. 2003)(holding that enforcement of § 1681s-2(a) is limited to federal and state agencies and officials); <u>Nelson v. Chase Manhattan Mortgage Corp.</u>, 282 F.3d 1057, 1059 (9th Cir.

In the present case, Plaintiffs' Complaint fails to even allege that they complied with the FCRA's notification requirement which, standing alone, requires dismissal of their claims. See, e.g., Downs v. Clayton Homes, Inc., 88 Fed. Appx. 851, 853-54 (6th Cir. 2004) (affirming summary judgment on FCRA claim because the plaintiffs "did not allege that they had filed a dispute with a credit reporting agency"). Furthermore, although Plaintiffs claim that they brought their credit reporting dispute to the attention of DMI/AmSouth, (See A. Clark Depo. at p. 228-229), they readily acknowledge that no dispute was submitted to a credit reporting agency:

> Q. When you obtained this credit report, did you make a dispute directly to the credit reporting agency or did you just take that to AmSouth?
>
> A. I took it I think just to AmSouth.
>
> Q. Okay. You don't recall filing anything with TransUnion or anybody like that, right?
>
> A. No. …

(Id.) See Vazquez-Garcia v. Trans Union de Puerto Rico, 222 F. Supp. 2d 150, 158 (D.P.R. 2002) (holding that § 1681s-2(b) private cause of action "is not triggered until after the furnisher of information receives notice of the dispute from a consumer reporting agency, not just the consumer" and citing numerous opinions in accord).

Finally, even if Amsouth or DMI had received proper notification of the dispute from a credit reporting agency (which they did not), Plaintiffs' claim nevertheless fails because DMI promptly investigated their concerns and requested that the credit reporting agencies update/correct Plaintiffs' credit history. For example, Mr. Clark testified in his deposition that

---

2002)(holding that "private enforcement [of violations of § 1681s-2(a)] under §§ 1681n & o is excluded"); Riley v. General Motors Acceptance Corp., 226 F. Supp. 2d 1316, 1319 (S.D. Ala. 2002)(holding same); Yelder v. Credit Bureau of Montgomery, L.L.C., 131 F. Supp. 2d 1275, 1283 (M.D. Ala. 2001)(holding same).

he first brought credit reporting concerns to DMI/AmSouth's attention in June of 2004. (A. Clark Depo., p. 228, l. 21-23 - p. 229, l. 1-7.)  At this point in time, DMI was already in the process of refunding Plaintiffs' mortgage account and reimbursing and/or waiving all late fees incurred due to the purchase of flood insurance.  (Przybyla Aff., ¶ 17.)  Moreover, in response to Mr. Clark's concerns, DMI promptly contacted the credit reporting agencies to request to that they correct any negative reporting on Plaintiffs' account from August of 2003 through June of 2004.  (Id., ¶ 18.)  The credit reporting agencies <u>actually made</u> the requested corrections as reflected in Plaintiffs' October 27, 2005 TransUnion report.  (A. Clark Depo., p. 232, l. 17 – p. 235, l. 22 and Exhibit 21 thereto.)  Therefore, Plaintiffs' claim based on § 1681s-2(b) fails as a matter of law, and AmSouth and DMI are entitled summary judgment as to this claim.

    **B. Plaintiffs' Breach Of Contract Claim Fails For Absence Of Breach**

Plaintiffs allege in Count I of the Complaint that AmSouth and DMI breached the mortgage agreement by force placing insurance without authority, failing to timely post payments, improperly disclosing credit information to third parties,[2] and breaching the implied covenant of good faith and fair dealing.  (Complaint, ¶ 26.)  Notwithstanding the fact that they allege multiple wrongs, Plaintiffs' concede that all of their grievances relate to and arise out of the force placement of flood insurance. (A. Clark Depo. at p. 158, l. 3-9; Complaint, ¶ 1.)  As demonstrated below, however, the purchase of flood insurance was not only <u>required</u> by the NFIA, but expressly contemplated by the applicable loan documents.

---

[2] The FCRA places broad duties on credit reporting agencies, users of credit reports, and furnishers of credit information.  The primary goal of the many requirements imposed by the FCRA is to assure "[a]ccuracy and fairness of credit reporting" for the benefit of both creditors and consumers.  15 U.S.C. § 1681(a).  Secondarily, the FCRA establishes a uniform national legal framework for regulating credit reporting and related activities.  See <u>Kodrick v. Ferguson</u>, 54 F. Supp. 2d 788, 794 (N.D. Ill. 1999).  To this end, the FCRA largely <u>preempts</u> state law claims against credit agencies, users of credit reports, and furnishers of information, like AmSouth and DMI.  See 15 U.S.C. §§ 1681h(e), 1681t(b)(1)(F).  Accordingly, to the extent Plaintiffs' contract and negligence claims are premised upon duties imposed by the FCRA, those claims are preempted and barred.

5

Paragraph 5 of Plaintiffs' Mortgage reads as follows: "Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term 'extended coverage' and **any other hazards for which Lender requires insurance**. This insurance shall be maintained in the amounts and for the periods that Lender requires." (Ex. 1 to A. Clark Depo. (Mortgage, ¶ 5).) (emphasis added)  On December 5, 2002, Geotrac, supplied DMI with a Standard Flood Hazard Determination ("SFHD") indicating that Plaintiffs' home was located in a special flood hazard area. (Przybyla Aff., ¶ 4 and Ex. A thereto.)  Geotrac reconfirmed this finding by submitting additional SFHDs on July 7, 2003 and December 26, 2003, respectively. (Exs. 7, 11 to A. Clark Depo.; Przybyla Aff., ¶ 5 and Exs. C and D thereto.)

As a result of Geotrac's findings, DMI demanded that Plaintiffs obtain flood insurance and, when they refused to do so, DMI advanced the necessary flood insurance premium ($808) in order to protect the lender's interest in the property and to comply with § 4012a(e)(2) of the NFIA. (Przybyla Aff., ¶¶ 6-7.)  DMI's actions were not only specifically required by the NFIA (and therefore immune from suit), but were also consistent with the terms and conditions of the Mortgage. (Ex. 1 to A. Clark Depo. (Mortgage, ¶ 5).)  Therefore, regardless of whether Plaintiffs' home was located inside the flood zone or on the flood zone's fringes, DMI/AmSouth was well within its contractual rights to require Plaintiffs to obtain flood insurance. Indeed, even after Plaintiffs' home was deemed to be just outside of a flood zone, DMI/AmSouth asked Plaintiffs to sign a "release of liability" for any damage caused by future flooding in exchange for waiving the flood insurance requirement. (Ex. 18 to A. Clark Depo.) Plaintiffs refused to sign the release, but continued to demand that the flood insurance requirement be removed. (See

6

Przybyla Aff., ¶ 16.) Clearly, if anyone breached the parties' contract, it was Plaintiffs, not DMI/AmSouth.

### C. Plaintiffs' Unjust Enrichment Claim Is Baseless

Plaintiffs' claim of unjust enrichment is based in quasi-contract and is barred because of the existence of an express contract – i.e., the Plaintiffs' Mortgage. See Tyson v. Arrington v. Thompson, 70 So. 2d 649, 651 (Ala. 1915) (Quasi-contract principles will only be applied "in the absence of an express contract … To travel beyond the parties making the contract, in search of implied promise … would introduce new and dangerous principles in implied contracts, the extent of which it is difficult to conjecture."); Kennedy v. Polar-BEK & Baker Wildwood Partnership, 682 Fo.2d 443, 447 (Ala. 1978) ("where an express contract exists between two parties, the law generally will not recognize an implied contract regarding the same subject matter"); Architectura, Inc. v. Miller, 769 So. 2d 330 (Ala. Civ. App. 2000) (affirming judgment for defendant on unjust enrichment claim where parties had express contract). Therefore, Plaintiffs' unjust enrichment claim is barred by the contract between the parties.

Moreover, "[i]n order to substantiate a claim of unjust enrichment under Alabama law, a plaintiff must show that 'the donor of the benefit … acted under a mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit … engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship.'" Morrow v. Green Tree Servicing, L.L.C., 360 F.Supp.2d 1246, 1251 n.13 (M.D. Ala. 2005) (quoting Jordan v. Mitchell, 705 So.2d 453, 458 (Ala. Civ. App. 1997)). In the present case, Plaintiffs have failed to supply a shred of evidence demonstrating that either DMI or AmSouth were the recipients of an "undue benefit" obtained through fraud or coercion. Indeed, the only "benefit" to AmSouth/DMI was that the purchase of insurance allowed them to remain in compliance with federal law. See 42 U.S.C. § 4012a(e)(2) (if a borrower fails to purchase flood

insurance "the lender or servicer **shall purchase the insurance on behalf of the borrower**…") (emphasis added). Moreover, within <u>days</u> of learning that the flood zone determination prepared by Geotrac was inaccurate, DMI refunded all amounts advanced for the purchase of flood insurance as well as all late fees/charges resulting from the advancement. (Przbyla Aff., ¶ 16.) Plaintiffs' unjust enrichment claim must be dismissed as there has been no unjust enrichment.

### D. Plaintiffs Cannot State a Claim for Conversion

Plaintiffs allege in Count III of the Complaint that "Defendants" "converted to their own use fund[s] in a sum yet to be determined, the property of Plaintiffs." (Complaint, ¶ 30.) In Alabama, conversion is defined as a wrongful taking, detention, or interference, or an illegal use or misuse of another's property. <u>See</u> <u>Willingham v. United Ins. Co. of America</u>, 628 So. 2d 328 (Ala. 1993). The gist of a conversion action is "the wrongful exercise of dominion over property to the exclusion or in defiance of a plaintiff's rights, where the plaintiff has a general or special title to the property or the immediate right of possession." <u>Willingham</u>, 628 So.2d at 333, citing <u>Ex parte SouthTrust Bank of Alabama, N.A.</u>, 523 So. 2d 407 (Ala. 1988).

In this case, Plaintiffs are seeking damages for the conversion of money. (Complaint, ¶ 30.) The general rule in Alabama is that ordinarily "an action will not lie for the conversion of money." <u>See</u> <u>Willingham</u>, 628 So.2d at 333, citing <u>Greene County Board of Education v. Bailey</u>, 586 So. 2d 893, 898 (Ala. 1991). The only exception to the general rule occurs in cases where the cash at issue is "specific money capable of identification." <u>See</u> <u>Green Tree Acceptance, Inc. v. Tunstall</u>, 645 So.2d 1384, (Ala. 1994), citing <u>Hunnicutt v. Higginbotham</u>, 138 Ala. 472, 35 So. 469 (Ala. 1903).

In <u>Willingham</u>, the plaintiffs/insureds sued their insurer for conversion of premium payments in connection with policies of insurance issued on the lives of their foster children. The Alabama Supreme Court held that because the premium payments were not drawn from a

8

specific account belonging to the plaintiff, the money in question was not sufficiently identifiable or in any manner segregated. See Willingham, 628 So.2d at 333. The Court further stated that "if we were to hold that the money paid by [plaintiffs] to [the company] in the form of premiums is sufficiently identifiable or segregated to give rise to a cause of action for conversion, we would be expanding the scope of that cause of action far beyond our holding in Gillis [v. Benefit Trust and Life Insurance Co., 601 So. 2d 951 (Ala. 1991)]." Id.; see also Johnson v. Life Insurance Company of Alabama, 581 So. 2d 438 (Ala. 1991)(holding that cause of action would not lie for the conversion of insurance premiums paid by the plaintiffs because the money in question was not sufficiently identifiable). Finally, the Court in Willingham noted that, even if Plaintiffs were entitled to a refund of their premiums, a conversion action cannot arise out of a debtor/creditor relationship. Willingham, 628 So.2d at 333. See also Green Tree Acceptance, Inc., 645 So. 2d at 1387.

In this case, DMI advanced funds ($808.00) necessary to purchase flood insurance because Plaintiffs refused to do so. Although this advancement temporarily increased Plaintiffs' mortgage payment from $783.91 to $841.02, Plaintiffs refused to submit the increased amount, thereby causing them to fall behind on their mortgage obligation. (Przybyla Aff., ¶¶ 9-14.) Since Plaintiffs refused to reimburse DMI for the insurance it purchased, they certainly had no title or immediate right to possess to the actual monies paid on their behalf, much less an ability to demonstrate that those funds were segregated or specifically identifiable. Finally, even if Plaintiffs could someone satisfy the elements of a conversion action (which Defendants dispute), the Alabama Supreme Court has held that a claim for conversion will not lie where, as here, "there is merely a relationship of debtor and creditor." Green Tree Acceptance, Inc. v. Tunstall,

645 So.2d at 1387. Accordingly, AmSouth and DMI are entitled to summary judgment as to this claim.

### E. Plaintiffs' Tort Claims Are Actionable Solely Under The Theory of Beach of Contract

A core principle of Alabama law -- that a Plaintiff cannot claim for tort when his loss is in contract -- is applicable to Plaintiffs' claims in the present case. See Brooks v. Hill, 717 So.2d 759 (Ala. 1998). Brooks holds that "where the parties have entered into a contract," a plaintiff can sue for negligence (or any other tort) only where the "cause of action arises from a breach of duty arising out of the contract, rather than from a breach of a promise of the contract itself." See Brooks, 717 So.2d at 763 (discussing and applying distinction between contract and tort actions in light of survival statute; dismissing claim improperly stated in tort); see also Coastal Plains Feeders, Inc. v. Hartford Fire Ins. Co., 545 F.2d 448, 456 (5th Cir. 1977) (holding that there is an "Alabama rule that a tort action will not lie if the wrong complained of consists of failure to perform a contract . . . "); Hunt Petroleum Corp. v. State, 901 So.2d 1, 10-11 (Ala. 2004) (Houston, J., concurring) ("[I]t is a universally held principle that the 'mere failure to perform a [contractual] promise does not constitute fraud.")

Plaintiffs' allege in Counts IV and VI that Defendants misrepresented that their property was in flood zone and negligently and/or wantonly[3] required flood insurance coverage.

---

[3] Plaintiffs also provide no support for their allegation of wantonness, and said claim is due to be dismissed for this reason as well. The Alabama Supreme Court clarified the definition of wantonness in Alfa Mutual Insurance Co. v. Roush, 723 So.2d 1250, 1256 (Ala.1998). "Wantonness" is statutorily defined as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala. Code 1975, § 6-11-20(b)(3) (1975). "Wantonness" has been defined by the Alabama Supreme Court as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result. Bozeman v. Central Bank of the South, 646 So.2d 601 (Ala. 1994). The facts in evidence simply do not, as a matter of law, rise to the level of wantonness. There is no absolutely no evidence in the record that DMI or AmSouth, in carrying out their duties and obligations, acted consciously or intentionally to cause injury to the Plaintiffs. To the contrary, as detailed above, the undisputed evidence demonstrates that DMI/AmSouth promptly investigated Plaintiff's disputes and concerns, refunded the amounts advanced for flood insurance, waived late fees and charges, and requested the credit reporting agencies update/correct their records well before this lawsuit was filed.

(Complaint, ¶¶ 29, 40-42.)  This is, at best, a claim that DMI/AmSouth failed to adhere to the promises contained in the Mortgage.  As more fully explained by the Alabama Supreme Court:

> The distinction between a claim *ex contractu* and one *ex delicto* is found in the nature of the grievance.  Where the wrong results from a breach of a promise, the claim is *ex contractu*.  However, if the wrong springs from a breach of a duty either growing out of the relationship of the parties, or imposed by law, the claim is *ex delicto*.

Brooks, 717 So.2d at 763 (quoting Jefferson County v. Reach, 368 So.2d 250, 252 (Ala. 1978)).

It is therefore clear that Plaintiffs cannot sue in tort, where their claim is, in substance, a claim that DMI/AmSouth purchased flood insurance under circumstances not permitted by the Mortgage.  That is the nature of Plaintiffs' claims in this case.  Plaintiffs are trying to dress up their contract claim as one stated in tort.  One has to surmise that this is nothing more than an attempt to recover the expanded damages that are available in tort, as opposed to contract.  Brooks reestablishes the principle, however, that these kinds of tactical machinations are due to be rejected.

The case law decisions are replete with examples of plaintiffs who try to gain a tactical advantage by dressing up a contract claim as a tort claim, or vice-versa.  Just as routine as these attempts, however, are retorts by the courts dismissing or granting summary judgment on such claims.  See, e.g., Lemon v. Golf Terrace Owner's Ass'n, 611 So. 2d 263, 264 n.1 (Ala. 1992) (observing that where "the gravamen of [plaintiff's] 'negligence' claim was that the [defendant] had 'negligently failed to perform' a contract," such claim was a proper subject of summary judgment); Lemmond v. Sewell, 473 So. 2d at 1047, 1048 (Ala. 1985) (holding that plaintiff's tort claim was barred by survival statute; rebuffing plaintiff's attempts to construe claim as *ex contractu*); Jefferson County, 368 So. 2d at 252 (applying shorter tort statute of limitations to plaintiff's claim; plaintiff tried to construe claim as one in contract); Sanford v. Western Life Ins.

11

Co., 368 So. 2d at 260, 263-64 (Ala. 1979) (holding that plaintiff's tort claim was barred by survival statute; rejecting plaintiff's attempts to construe claim as *ex contractu*); Premier Industrial Corp. v. Marlow, 295 So. 2d 396 (Ala. 1974) ("[A] mere failure to perform a contractual obligation is not a tort, and it furnishes no foundation for an action on the case.").

Simply put, Plaintiffs negligence, wantonness and fraud claims are the very same claims they make in their breach of contract claim, in which they allege DMI/AmSouth "force placed insurance on [their] account without authority." (Complaint, ¶ 26.) Plaintiffs' masquerade – just like the masquerades in Brooks, Coastal Plain, Lemon, Lemmond, Jefferson County, Sanford, and Premier – cannot insulate their tort claims from summary judgment.

### F. Plaintiffs' Misrepresentation Claim Fails Because They Cannot Establish a Misrepresentation

Plaintiffs have attempted to allege that DMI and AmSouth misrepresented "that their property was in a flood zone, that they had to have flood insurance and if they did not pay for the flood insurance their house would be foreclosed." (Complaint, ¶¶ 41-43.) While Plaintiffs never believed their home was actually located in a flood zone and therefore did not rely on any representation to the contrary (A. Clark Depo. at p. 32, l. 11-13; p. 44, l. 1-7.), they claim that they did believe "the representation that their home would be foreclosed and in reliance … paid the demanded monies to their injury." (Id., ¶ 43.) Based on the undisputed facts before the Court, however, these allegations cannot serve as the basis for a fraud type claim under Alabama law.

Plaintiffs' misrepresentation claim is apparently premised upon DMI/AmSouth's May 4, 2004 demand letter, which states as follows:

> You owe $2,949.94, to total due for the 03-01-2004- through 05-01-2004 payments.

> Since you have not sent the full amount due or made reasonable arrangements for repayment, we are reviewing your file for possible referral to the Foreclosure Review Board.
>
> It is not too late to prevent foreclosure. You must either have the full amount due in our office by May 11, 2004 or call us by that date to discuss possible alternatives. If you do not respond to this request, we will assume you have no interest in keeping your home.
>
> If the Foreclosure Department Review Board agrees, we will ask attorneys to begin legal action on your account. If you decide to reinstate after legal action has begun, you will be responsible for attorney fess along with delinquent payments.
>
> Please do not pass up what may be your last chance to prevent foreclosure. Call our office at 1-888-393-3998, or send the full amount due immediately.

(Ex. 14 to A. Clark Depo.) The statements made in the above-referenced letter are <u>100% accurate</u> – DMI/AmSouth began the necessary procedures to foreclose Plaintiffs' mortgage loan. That process was halted approximately <u>three weeks</u> later when DMI received a revised SFHA from Geotrac indicating that Plaintiffs' home was actually "just outside of flood zone A." (Ex. 17 to A. Clark Depo.; Przybyla Aff., ¶ 14 and Ex. E thereto.) That very same day, DMI wrote to Plaintiffs to confirm that their "property does not lie in a special flood hazard area," refunded Plaintiffs' account all amounts advanced for flood insurance, and waived all late fees/charges. (A. Clark Depo. at p. 200, l. 1-12 and Exs. 18 and 19 thereto; Przybyla Aff., ¶¶ 15-16.)

In sum, DMI/AmSouth's statement that Plaintiffs' home could be foreclosed if they did pay the amounts require or arrange for possible alternatives was true. Plaintiffs have failed to provide a shred of evidence to the contrary. Because DMI/AmSouth did not make a misrepresentation, Plaintiffs' fraud claim fails as a matter of law.

### G.    Plaintiffs' FDCPA Claim Fails As A Matter of Law

Plaintiffs' vaguely allege in Count VIII of the Complaint that DMI and AmSouth violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 <u>et seq</u>. by failing to "timely and

adequately investigate" Plaintiffs' disputes and by failing to "correct false and erroneous credit information and billing errors." (Complaint, ¶ 50.) First of all, because AmSouth obtained the debt as a secured party, it is not a "debt collector" subject to liability under the FDCPA. 15 U.S.C. § 1692a(6)(F). Second, although DMI qualifies as a "debt collector", Plaintiffs' claims against it are not cognizable under the statute. Specifically, the stated purpose of the act is to "eliminate abusive debt collection practices by debt collectors…". 15 U.S.C. § 1692(e). Plaintiffs have not alleged <u>any</u> wrongdoing in connection with DMI's effort to collect the debt, they merely disagree with the propriety of the decision to advance monies for the purchase of lender-placed flood insurance.[4] Accordingly, Plaintiffs' FDCPA claim fails as a matter of law.

### H.     All of Plaintiffs' Claims Fail for Lack of Damages

Even if Plaintiffs' could somehow demonstrate that their claims fall outside of the NFIA's broad immunity provisions, and further assuming that they could create an issue of fact as to one or more of their claims, those claims nevertheless fail because Plaintiffs have not been damaged. As stated in Defendants' prior submissions, immediately after receiving notification that the flood determination was inaccurate, DMI reviewed, analyzed, corrected and fully refunded Plaintiffs' mortgage account. (Przybyla Aff., ¶¶ 16-17.) This was accomplished <u>over one year prior</u> to the date this lawsuit was filed. (<u>Id.</u>) Plaintiffs' own accountant even concedes that all monies were refunded to Plaintiffs' mortgage account (Ex. G to Plaintiffs' Opposition). Although the accountant suggests that the refunds were not posted "retroactively" thereby depriving Plaintiffs of the "avoidance of interest" on advances, DMI's records demonstrate that

---

[4] Although the FDCPA provides a procedure whereby a consumer can seek validation of debt, 15 U.S.C. § 1692g(a)(b), there is no evidence that Plaintiffs' disputed the debt in writing within the 30-day time frame required by the statute. Moreover, as already noted, Plaintiffs' did not dispute the underlying mortgage debt, only the decision to require flood insurance.

the advances <u>were not capitalized nor was interest charged</u> on the advances. Accordingly, the date of posting of the refunds is irrelevant.

For all of these reasons, and the reasons set forth in their initial submission, AmSouth and DMI respectfully request that this Court enter summary judgment in their favor and dismiss each of Plaintiffs' claims with prejudice.

                          s/ John David Collins
                          Thomas W. Thagard III
                          John David Collins

                          Attorneys for Defendants Dovenmuehle Mortgage, Inc. and AmSouth Bank

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, Alabama 35203-2602
(205) 254-1000

**CERTIFICATE OF SERVICE**

 I hereby certify that on this 31st day of August, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

DOUGLAS M. BATES
CLIFFORD W. JARRETT
424 SOUTH OATES STREET SUITE 1
DOTHAN, AL 36301

JOSEPH E. STOTT
SCOTT, SULLIVAN, STREETMAN & FOX, P.C.
2450 VALLEYDALE ROAD
P.O. BOX 380548
BIRMINGHAM, AL 35244

            s/ John David Collins
            OF COUNSEL