**IN THE DISTRICT COURT OF THE UNITED STATES FOR THE**

**MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION**

```
ARTHUR EARL CLARK and wife,    *
BARBARA E. CLARK,              *
                               *
     Plaintiffs,               *   CIVIL ACTION NO.
                               *   1-05CV747-MHT-VPM
     v.                        *
                               *
AMSOUTH MORTGAGE COMPANY,      *
INC., a corporation,           *
et al.,                        *
                               *
     Defendants.               *
```

### PLAINTIFFS' MEMORANDUM OF AUTHORITIES IN OPPOSITION TO DEFENDANTS AMSOUTH AND DOVENMUEHLE'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT (doc 65)

Plaintiffs, by counsel, respectfully submit their Memorandum of Authorities in Opposition to AmSouth's and Dovenmuehle's Supplemental Motion for Summary Judgment filed Sept 5, 2006.

Plaintiffs renew their Motion to Strike Defendants' Supplemental Motion for Summary Judgment as being filed untimely and not in conformity with Rule 56 of the *Federal Rules of Civil Procedure (F.R.C.P.)*.

Plaintiffs have several pending motions which hamper their ability to respond to this motion. The first is the original Motion for Summary Judgment filed by these same Defendants. If the Court finds in Plaintiffs' favor in that Motion or parts thereof, Plaintiff would allege the Court can not re-address those issues already decided. The Defendants have not provided

any new law or facts that would support the Court overturning its original order and the doctrines of *res judicata* and/or law-of-the-case applies. In *Sophocleus V. Alabama Department of Transportation*, 305 F.Supp.2d 1238 (M.D.Ala. 2004) our District discusses the doctrine of law-of-the-case as follows:

> [26] The law-of-the-case doctrine holds that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816, 108 S.Ct. 2166, 2177 (1988) (internal citations omitted). The rule "promotes the finality and efficiency of the judicial process by protecting against the agitation of settled disputes." Id. (internal citations omitted). The doctrine "directs a court's discretion, it does not limit the tribunal's power." Arizona v. California, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391 (1983). A court always "has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loath to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." Christianson, 486 U.S. at 817, 108 S.Ct. at 2178 (internal citations omitted); see also Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1372 (11th Cir. 2003).

This Court has adopted the doctrine of *res judicata*, "a final judgment rendered by the court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action." (*Black's Law Dictionary* 1305, 6th ed. 1990.) The advisory Committee Notes to F.R.C.P. Rule 56(d) state, "the partial summary judgment is merely a pretrial adjudication that

certain issues shall be deemed established for the trial of the case."

Defendants' Supplemental Motion for Summary Judgment serves as a Motion to Reconsider their original Motion for Summary Judgment, even before the first is decided. Such a motion is premature and is due to be dismissed on this ground alone. This Supplemental Motion for Summary Judgment does not inform the Court or the Plaintiffs of legal and/or factual contentions. Therefore Plaintiffs have been denied the meaningful opportunity to respond as provided for in Rule 56, F.R.C.P. This Supplemental Motion for Summary Judgment fails to conform to the requirements of Rule 56, F.R.C.P. and serves an injustice to Plaintiffs. Plaintiffs are replying to items, statements of undisputed fact and statements of law along with other legal argument that may or may not be before the Court.

The burden is on the moving party to first establish the lack of disputed facts. In *Allstate Insurance Co. V. Eskridge*, 823 So.2d 1254, 1258 (Ala. 2001), the standard was explained thusly:

> Our standard for review of a trial court's ruling on a motion for a judgment as a matter of law is settled: "When reviewing a ruling on a motion for a judgment as a matter of law, this Court uses the same standard the trial court initially used in granting or denying the motion. *Palm Harbor Homes, Inc. v. Crawford,* 689 So.2d 3 (Ala.1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented substantial evidence to allow the factual issue to be submitted to the jury

for resolution. *Carter v. Henderson,* 598 So.2d 1350 (Ala.1992). See also § 12-21-12, Ala. Code 1975, and *West v. Founders Life Assurance Co. of Florida,* 547 So.2d 870 , 871 (Ala.1989). A motion for a judgment as a matter of law 'is properly denied where there exists any conflict in the evidence for consideration by the jury.' *Cloverleaf Plaza, Inc. v. Cooper & Co.,* 565 So.2d 1147 , 1149 (Ala.1990). 'In reviewing a ruling on a motion for a [judgment as a matter of law], this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences from that evidence as the jury would have been free to draw.' *Daniels v. East Alabama Paving, Inc.,* 740 So.2d 1033, 1037 (Ala.1999).

This standard was again stated *in Spraggins V. Knauf Fiber Glass GMBH, Inc*. 401 F.Supp.2d 1235, 1236 (M.D. Ala. 2005) where this Court set forth the standard of Review for Summary Judgment as follows:

> Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Under Rule 56, **the party seeking summary judgment must first inform the court of the basis for the motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper**. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115-17 (11th Cir.1993) (discussing burden-shifting under Rule 56). The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings. Fed.R.Civ.P. 56(e). [Emphases added.]
> The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in

favor of that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

If the Court grants Plaintiffs' motion to Strike Defendants' "Supplemental Reply Brief" (doc 62), Defendants' "Supplemental Motion for Summary Judgment" (doc 65) must be dismissed as it does no more than attempt to re-submit what is already before the Court. Further, it again fails to meet the requirements of Rule 56(e) *F.R.C.P.* Thus, the Court need look no further at this pleading. Consequently, Plaintiffs submit the remainder of this Memorandum should be given no further consideration.

Alternatively, if the Court denies Plaintiffs' Motions to Strike Defendants' "Supplemental Reply Brief" (doc 62) and Defendants' "Supplemental Motion for Summary Judgment" (doc 65) Plaintiffs submit the following as the continuation of their Memorandum of Authorities:

Plaintiffs hereby incorporate by reference their Memorandum of Authorities (doc 55) and all attachments filed in Response to Defendants' "Motion for Summary Judgment". To avoid duplication, Plaintiffs will not insert the entirety of those documents into this paper. For the convenience of the Court certain key exhibits have been reproduced and attached as exhibits to this memorandum.

Defendants rely on their misapplication of 15 U.S.C. § 1681 to this matter. Plaintiffs' complaint states, "AmSouth and Dovenmuehle violated the provisions of the Fair Credit Reporting Act, 15 U.S.C. Sections 1601 *et seq."* 15 U.S.C. §1666 provided the basis for Plaintiffs' complaint. 15 U.S.C. §1666c, "Payments received from an obligor under an open end consumer credit plan by the creditor shall be posted promptly to the obligor's account as specified in regulations of the Board. Such regulations shall prevent a finance charge from being imposed on any obligor if the creditor has received the obligor's payment in readily identifiable form in the amount, manner, location, and time indicated by the creditor to avoid the imposition thereof." Likewise §§ 1640, 1666 and 1692 provide Plaintiffs with the bases for their complaint and the authority to seek civil redress of the wrong perpetrated against them. The crux of these Defendants' arguments are dependent upon Plaintiffs' sole reliance on §15 U.S.C. 1681, as the basis of their claims, which was never the case.

Again, on page 4 of Defendants' "Supplemental Brief" Defendants re-assert a key issue still pending in their original Motion for Summary Judgment, when they falsely claim "DMI promptly investigated their concerns." Then they mischaracterize Mr. Clark's testimony as saying "he first brought credit reporting concerns to DMI/AmSouth's attention in June of 2004."

These Defendants failed to consider the limited scope of their question to him merely inquiring, "when you first spoke with Jacqueline King."

Mr. Clark testified in early June 2003 he had contacted AmSouth to dispute billing practices (Deposition of A. Clark, p103, lines 3-8.) Mr. Clark contacted AmSouth several times prior to June 2004 challenging the force placing of the insurance as well as the missapplications of payments. (See consolidated Notes Log page 00006, dated 032604 ADX, attached as exhibit A; Certified letter of A. Clark, attached as exhibit B; and A, Clark's Affidavit Paragraphs 20-22, attached as exhibit C). By these inquiries, Plaintiffs placed Defendants on notice that there was a disputed charge on their account. Defendants turned a deaf ear to their cries for assistance and then adding insult to injury started charging penalties and interest on those disputed charges. All of these actions are prohibited by 15 U. S. C. 1640, 1666 and 1692. Again, §1681 has nothing to do with this litigation.

Defendants' interpretation of Mr. Clark's testimony "[Plaintiffs] concede that all their grievances relate to and arise out of the force placement of flood insurance," (page 5, paragraph B, "Supplemental Brief") is an oversimplification that distorts the facts and serves only to distract the Court from the real issue. Irrespective of the validity of these Defendants'

assertions they had a legal obligation to force place this insurance, these Defendants failed to comply with the very laws that were designed to protect consumers like the Clarks.

Defendants had certain duties under 15 U.S.C. §§ 1640, 1666 and 1692. Defendants' last sentence on page 5, "Summary Brief" again reopens the very same issues this Court is to decide in response to Defendants' original pending Motion for Summary Judgment (doc. 32).

Defendants' "Supplemental Brief" again re-argues those issues contained in its original Motion for Summary Judgment (p. 6), which this Court has not yet addressed. They do interject a new twist in the second paragraph, claiming a contractual right to require Plaintiffs to obtain flood insurance, but provide no support for such a contention, which Plaintiff would argue did not exist.

Plaintiffs concede the contract language includes, "Borrower shall keep the ... property insured against ... any other hazards for which lender requires insurance." (Paragraph 5, Plainitiffs' Mortgage.) *Black's Law Dictionary*, 719 (6th ed. 1990) defines hazard as "the risk, danger, or probability that the event insured against may happen, varying with the circumstances of the particular case." Defendants admit Plaintiffs' property was never in a flood zone. Logic dictates Defendants have no right to require, yet alone force place insurance against a loss where no

such hazard exists. To find otherwise would allow banks to require home owners in Dothan, Alabama to purchase insurance against damage from volcanic eruption or any other possibility no matter how remote.

The last phrase of the contract term, "for which the lender requires insurance" is also controlling. Defendants offer no evidence as to any requirement for the Plaintiffs to have insurance against loses for anything other than fire, the existence of which is not in question.

In Defendants' Supplemental Reply Brief they point to Plaintiffs' failure to sign a "release of liability". They go on to state, "Plaintiffs refused to sign the release, but continued to demand that the flood insurance requirement be removed." (P. 6 last line.) In fact the flood insurance had already been removed, prior to this demand being made. Defendants place great importance on the determination that Plaintiffs' property is "just outside" a flood zone. Outside is outside the hazard area. Defendants have no right under the law or contract to require any insurance in the absence of a real and identified hazard. Nor do they have the right to extort the Clarks into executing a release. Defendants attempted to invoke additional contract terms which Plaintiffs simply rejected. Plaintiffs were well within their rights not to accept changes in the contract terms, and their failure to do so has no bearing on the case at bar.

Defendants' assertion they have a right to require flood insurance on property that is outside any flood zone lacks any legal support and is simply untrue.

Defendants failed to establish the absence of a material fact with any support. These Defendants have maintained their only motivation concerning force placing the insurance was to satisfy Federal Law. They have provided no other information to establish any other motive. Contrary to these Defendants' statement that it was the Plaintiffs and not they that breached the contract (p. 7, first line, Defendants' "Supplemental Brief"), Plaintiffs simply disputed the additional fees imposed because of the illegal and/or improper acts of these Defendants.

Defendants claim their cited cases establish the proposition that unjust enrichment claims can not be maintained if there is a contract between the parties. However, *Kennedy v. Polar-BEK & Baker Wildwood Partnership*, 682 So.2d 443, 447 (Ala. 1978), states "where an express contract exists between two parties, the law **generally** will not recognize an implied contract **regarding the same subject matter**." [Emphases added.] Plaintiffs claims of unjust enrichment are not based on the contract terms, but on matters not contemplated by and completely outside the contract.

Defendants took control of Plaintiffs' money and had exclusive use of it for some period of time. They also charged interest, late fees and charges totaling $315.40 (according to

Defendants). (See paragraph 35, page 9 Defendants' Brief in Support of Motion for Summary Judgment (doc 33). Plaintiffs request this Court to take Judicial Notice that the use of money in and of itself is a financial benefit.

Defendants' "Supplemental Brief" again insists on the immunity they falsely claim under 42 U.S.C. § 4012 which was the crux of their arguments in their pending original motion for summary judgment. (page 7, last sentence.)

These Defendants cite several cases to support their position that conversion does not occur if the property is money. Plaintiffs agree this is the general rule in Alabama. All the cases cited by Defendants have a common thread not found in the case at bar. In the case cited by Defendants, the funds taken were not earmarked for a specific purpose. In the case at bar the funds were identified by the Plaintiffs to be placed into a specific account for a specific purpose. They were separately identifiable. The Clarks restricted the use of said funds to "(3003072091) principal and interest only." (See Exhibit B.) This fact pattern removes the case at bar from the control of Defendants' line of cases. This situation was discussed in the dissent of *Delmore v. Gonzales,* 903 So.2d 140, 147 (Ala. Civ. App. 2004) as follows:

> Similarly it has been held in Alabama that, where an attorney diverts money placed by a client into the attorney's trust account, although a "conversion does

> not ordinarily lie for money represented by a general debt .... the rule is otherwise as to funds placed in the custody of another for a specific purpose and their diversion for other than such specified purpose subjects the holder to liability in conversion." Dillard v. Payne, 615 S.W.2d 53, 54 (Mo. 1981). See also Craven v. Wright, 114 Or. 692, 693-94, 236 P. 1043, 1044 (1925) ("Where a check has been given to a person for one purpose and it has been diverted to a purpose different from that from which it was given, an action in trover may be maintained by the maker thereof for the conversion of the money paid thereon."); Taylor v. Dwyer, 129 Ala. 325, 29 So. 692 (1901) (citing with approval Farrand v. Hurlburt, 7 Minn. 477 (1862)) (holding that a conversion claim could be brought with respect to $436 placed in the hands of the defendant to be loaned or invested by the defendant in the name of the plaintiff, but which the defendant loaned and invested in his own name).
> The gravamen of a conversion claim is the wrongful converting of someone else's property to the defendant's own use. In the present case, specific money was taken by Gonzales. It was converted into a credit in his bank account. The fact that the specific currency is no longer in Gonzales's physical possession is not dispositive; the fact is that there is a credit in Gonzales's bank account directly traceable to the money at issue. If we hold that a credit in a bank account directly traceable to moneys rightfully belonging to another party cannot be the object of a conversion merely because other moneys have also been deposited into that account, then we will indeed have

made it easy for anyone who converts the money of another to insulate himself or herself from tort liability for conversion.

In *Delmore v. Gonzales*, *supra* the Court ruled that the money was not subject to conversion because it had been commingled with other money before being deposited into the account. That same court quoted *Greene County Bd. Of Educ. V. Bailey*, 586 So.2d 893 (Ala. 1991), "Generally, an action will not lie for the conversion of money. However, if the money at issue is capable of

identification, then a claim of conversion may be appropriate." The money in the case at bar was actually Plaintiffs' check with a restriction that it be applied toward principal and interest only on a specifically identified account. (See exhibit B.) Those checks were negotiated, placed into the account and then wrongfully distributed for other purposes. Therefore the money at issue in the case at bar is capable of identification, giving rise to a claim of conversion. Plaintiffs' funds were never intended to be fungible.

Defendants then attempt to generalize Plaintiffs' tort claims as being a breach of contract without specifying what provision of *what* contract. They do not point to any specific provision of any contract and provide no basis for their generalized characterization. They fail to identify any contractual terms that control the actions complained of, or to which Plaintiffs can respond. Defendants have failed to show there is no genuine issue as to any material fact.

These Defendants state, "DMI/AmSouth did not make a misrepresentation. Plaintiffs' fraud claim fails as a matter of law." ("Supplemental Brief" (doc 62), page 13.) It is undisputed these Defendants repeatedly made false statements to these Plaintiffs, *i.e.*, their home was in a flood zone, that Federal Law required them to purchase flood insurance and that the flood

insurance was only cancelled because "OTHER INSURANCE COVERAGE PROVIDED." (See attachment D.)

Damages are always a jury question. These Plaintiffs have alleged damages from the emotional strain caused by these Defendants. They have also provided proof of money they spent to overcome these Defendants' assertions they were in a flood zone. (See exhibit E.) Even the Defendants' own pleadings as well as the Affidavit of Danny McCallister (See exhibit F.) admit the Clarks lost use of their money for a period of time. Even if all of Plaintiffs' claimed damages were disallowed, 15 USC § 1640 sets the minimum damages at $200. Plaintiffs have certainly been damaged. The only question is in what amount.

For the above cited reasons, along with those previously submitted, Plaintiffs Arthur and Barbara Clark respectfully submit Defendants' Supplemental Motion for Summary Judgment should be stricken, and alternatively denied with prejudice.

Respectfully submitted this the 28th Day of September, 2006.

/s/Clifford W. Jarrett
Clifford W. Jarrett (JAR004)
Attorney for Plaintiffs
424 South Oates Street Suite #3
Dothan AL 36301
(334)702-0777

**CERTIFICATE OF SERVICE**

    I hereby certify that on September 28, 2006, I electronically filed the forgoing with the Clerk of the Court using CM/ECF system which will send notification of such filing to the following: Joseph E. Stott, Esq., Thomas W. Thagard, III, Esq., and John David Collins, Esq. and I hereby certify that I have mailed by United States Postal Service the documents to the following Non-CM/ECF participants: NONE.

/s/Clifford W. Jarrett
Clifford W. Jarrett
Of Counsel