## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| ARTHUR EARL CLARK AND ) | |
| BARBARA E. CLARK, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION NUMBER |
| ) | 1:05-cv-00747-MHT-VPM |
| ) | |
| AMSOUTH MORTGAGE COMPANY, INC., ) | |
| et al. ) | |
| ) | |
| Defendants. ) | |

### REPLY BRIEF IN SUPPORT OF SUPPLEMENTAL
### MOTION FOR SUMMARY JUDGMENT

Defendants AmSouth Bank ("AmSouth") and Dovenmuehle Mortgage, Inc. ("DMI") submit this reply brief in further support of their pending supplemental motion for summary judgment. In support of their reply, AmSouth and DMI state as follows:

1. Plaintiffs' primary argument in opposition to AmSouth and DMI's supplemental summary judgment motion is not directed to the merits of the submission, but rather on the technical argument that Defendants should not be permitted to move for summary judgment on more than one occasion, notwithstanding the fact that the supplemental submission (seeking summary judgment on new and additional grounds) <u>was filed by the deadline established by the Court's Scheduling Order</u>. Plaintiffs have now devoted five separate briefs [Doc Nos. 63, 66, 67, 73, 75, and 76], spanning over 30 pages of legal argument, in an effort to avoid scrutiny of their claims pursuant to Fed. R. Civ. P. 56.

01396530.1

2.     As explained in AmSouth and DMI's prior submissions [Doc. Nos. 64 and 68] which are incorporated herein by reference, their first summary judgment motion and brief, filed approximately <u>two months</u> before the summary judgment deadline established by the Court's Scheduling Order, sought dismissal of all of Plaintiffs' claims based on the immunity provided to these defendants under the National Flood Insurance Act. AmSouth and DMI limited their <u>early</u> summary judgment argument to this narrow (yet potentially dispositive) issue because a favorable ruling by the Court could have disposed of all of Plaintiffs' claims in advance of the summary judgment deadline, thereby eliminating the need for much potential discovery.

3.     As the Court had not ruled on the first motion for summary judgment, AmSouth and DMI, on August 31, 2006 (the dispositive motion deadline set in the Court's Scheduling Order), submitted a supplemental summary judgment motion/brief demonstrating to the Court that AmSouth and DMI are entitled to judgment as a matter of law on the merits of Plaintiffs' state and federal claims as well. While Plaintiffs repeatedly suggest that the supplemental summary judgment motion/brief "reargues" the issues raised in Defendants' first summary judgment brief, a cursory review of the actual submissions belies their contention.

4.     Plaintiffs have provided no rational explanation as to how the supplemental summary judgment brief was untimely or even more so, how they could possibly be prejudiced or disadvantaged by responding to the substantive arguments raised in a supplemental submission that was filed within the summary judgment deadline established by the Court. See Fed. R. Civ. P. 56(b) ("A party against whom a claim … is asserted … may, **at any time**, move with or without supporting affidavits for a summary judgment in the party's favor **as to all or any part thereof**.") (emphasis added). Instead, Plaintiffs make vague reference to principles of "*res judicata*" and "law of the case" (even though the Court has yet to rule on either summary

judgment motion) and suggest that they have been deprived of "a meaningful opportunity to respond" to the supplemental motion/brief (even though the Court allowed them 28 days to file a response, which they did).

5.   Plaintiffs' opposition to AmSouth and DMI's supplemental summary judgment motion/brief reveals why they so desperately seek to insulate their claims from the Court's review. For instance, in Count VII of their Complaint (entitled "Violation of the Fair Credit Reporting Act"), Plaintiffs allege that "Defendants failed to investigate the credit transactions which had been disputed by the Clarks" and "reported[ ] false credit information on the Clarks to credit bureaus and credit collecting agencies." (Complaint, ¶¶ 45-46). These allegations clearly invoke § 1681 of the FCRA, which outlines a creditor's reinvestigation obligations upon receiving notice of a dispute from a credit reporting agency.

6.   Now that AmSouth and DMI have demonstrated that Plaintiffs cannot state claim under § 1681 (See Defendants' Supplemental Brief, pp. 3-5), Plaintiffs abandon their FCRA claim in favor of an entirely new claim under § 1666c of the Truth in Lending Act, which sets forth a creditor's obligations with respect to the posting of payments under "an open end consumer credit plan." Aside from the fact that Plaintiffs are not permitted to plead new claims through an opposition to summary judgment, Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1314-15 (11th Cir. 2004), Plaintiffs' mortgage loan is not an "open end consumer credit plan" within the meaning of the statute.[1] Therefore, regardless of whether their claims are evaluated pursuant to the FCRA (as plead in the complaint) or TILA (as argued in opposition to summary judgment), AmSouth and DMI are entitled to summary judgment.

---

[1] The term "open end credit plan" means "a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding principal balance….". See 15 U.S.C. § 1602(i). Clearly, Plaintiffs' mortgage does not fall within the foregoing definition.

7.  Plaintiffs attempt to avoid summary judgment on their unjust enrichment claim by arguing that such claim is not based on the parties' contract, "but on matters not contemplated by and completely outside of the contract." (Plaintiffs' Opposition, p. 10.) Although Plaintiffs fail to elaborate on these supposed other "matters," their own response brief complains of "interest", "late fees" and other "charges" which, by their very nature, were assessed pursuant to Plaintiffs' Mortgage. As stated in AmSouth and DMI's initial submission, Plaintiffs' unjust enrichment claim is barred by the existence of an express contract between the parties.[2]

8.  While they concede that an action ordinarily will not lie for the conversion of money, Plaintiffs nevertheless insist that the restriction placed on a single check ("principle and interest" only) takes their claims outside of the general rule. Even assuming for the sake of argument that Plaintiffs are correct (which Defendants dispute), they overlook the fact that, approximately one-year before this lawsuit was filed, DMI reviewed, analyzed, corrected and fully refunded their account – thereby eliminating the possibility of any damages. Plaintiffs also fail to address (much less attempt to distinguish) the Alabama Supreme Court decisions which <u>expressly refuse</u> to recognize a claim for conversion where, as here, "there is merely a

---

[2] Plaintiffs contend that flood insurance cannot be required even though their home was ultimately deemed to be located just outside of a flood zone. Specifically, relying upon *Black's Law Dictionary*'s definition of "hazard," Plaintiffs state that "logic dictates Defendants have no right to require, yet alone force place insurance against a loss where no such hazard exists." (Plaintiffs' Opposition, p. 8-9.) This argument, however, ignores the fact that Plaintiffs live in "Flood Zone X(C)" – a "**minimal or moderate flood risk hazard subject to flooding from severe storm activity or local drainage problems**." (Ex. 17 to A. Clark Depo.) (emphasis added) Clearly, Flood Zone X(C) is a "hazard" for which DMI/AmSouth may, at their discretion, require insurance. This is confirmed by the Mandatory Purchase of Flood Insurance Guidelines adopted by the Federal Emergency Management Agency:

> Lenders, on their own initiative, may require the purchase of flood insurance even if a building is located outside an SFHA. A decision to require coverage under such circumstances is not compelled by the statute, but is founded upon the contract relationship between the parties. Lenders have the prerogative to require flood insurance to protect their investments, provided they have reserved that option in their mortgage document.

(See FEMA Mandatory Purchase of Flood Insurance Guidelines, www. www.fema.gov/business/nfip/mpurfi.shtm). Therefore, separate and apart from the grant of immunity provided under the NFIA, Amsouth/DMI had the contractual right to place the flood insurance now complained of.

4

relationship of debtor and creditor." Green Tree Acceptance, Inc. v. Tunstall, 645 So.2d 1384, 1387 (Ala. 1994); Willingham v. United Ins. Co. of America, 628 So.2d 328, 333 (Ala. 1988).

9. Finally, with respect to their fraud claim, Plaintiffs do not dispute the fact that they did not reasonably rely upon statements that their home was in a flood zone. Plaintiffs have likewise failed to provide any evidence that DMI/AmSouth misrepresented its intention to foreclose their mortgage loan if they failed to remit the required increased payment amount. Instead, Plaintiffs (yet again) change course and now claim that Defendants misrepresented "that Federal Law required them to purchase flood insurance and that the flood insurance was only cancelled because 'OTHER INSURANCE COVERAGE PROVIDED'." (Plaintiffs' Opposition, p. 13-14.) Aside from failing to plead such allegations in their Complaint,[3] Plaintiffs cannot demonstrate that referenced statements were false, that they reasonably relied upon those statements, or that they have in any way suffered damage.

For the reasons set forth in their initial submission and herein, AmSouth and DMI respectfully request that this Court grant their motion for summary judgment in all respects.

Respectfully submitted,

s/ John David Collins
Thomas W. Thagard III
John David Collins

Attorneys for Defendants Dovenmuehle Mortgage, Inc. and AmSouth Bank

---

[3] Plaintiffs' failure to plead such claims in the Complaint as required by Fed. R. Civ. P. 9(b) bars them from doing so in response to a summary judgment motion. See Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1314-15 (11th Cir. 2004) (holding that plaintiffs may not raise new claims at the summary judgment stage: "A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.")

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, Alabama 35203-2602
(205) 254-1000

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 6th day of October, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

DOUGLAS M. BATES
CLIFFORD W. JARRETT
424 SOUTH OATES STREET SUITE 1
DOTHAN, AL 36301

JOSEPH E. STOTT
SCOTT, SULLIVAN, STREETMAN & FOX, P.C.
2450 VALLEYDALE ROAD
P.O. BOX 380548
BIRMINGHAM, AL 35244

                                               s/ John David Collins
                                               OF COUNSEL