IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION


ARTHUR EARL CLARK and wife, )
BARBARA E. CLARK,            )
                             )
    Plaintiffs,              )
                             )      CIVIL ACTION NO.
    v.                       )      1:05cv747-MHT
                             )         (WO)
AMSOUTH MORTGAGE COMPANY,    )
INC., a corporation,         )
DOVENMUEHLE MORTGAGE,        )
INC., a corporation, and     )
GEOTRAC INFORMATION SYSTEM   )
SPECIALISTS, an entity,      )
                             )
    Defendants.              )

OPINION

Plaintiffs Arthur Earl Clark and Barbara E. Clark

filed this lawsuit in an Alabama state court, charging

that defendants AmSouth Bank (incorrectly named as AmSouth

Mortgage Company, Inc. in the complaint), Dovenmuehle

Mortgage, Inc., and Geotrac Information System

Specialists, incorrectly 'forced placed flood insurance'

on their property.  The Clarks asserted the following

state-law claims: breach of contract, unjust enrichment,

conversion, negligence, breach of duty to third-party beneficiary, and fraud. They also asserted federal claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. The defendants removed this lawsuit to this federal court, invoking removal jurisdiction over these state-law and federal claims, 28 U.S.C. § 1441, based on 15 U.S.C. §§ 1681p (FCRA) and 1692k(d) (FDCPA), 28 U.S.C. § 1331 (federal question), and 28 U.S.C § 1367 (supplemental).

Currently before the court are the defendants' motions for summary judgment. For the reasons set forth below, summary judgment will entered in favor of AmSouth and Dovenmuehle on all claims against them and in favor of Geotrac on all federal and some state-law claims against it. The remaining state-law claims against Geotrac will be remanded to state court.


I. SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings,

2

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993) (discussing burden-shifting under Rule 56).  The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings.  Fed. R. Civ. P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In doing so, the court must

3

view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).


## II.  FACTS

In August 1988, the Clarks executed and delivered to American Federal Savings Bank of Duval County a promissory note secured by a mortgage on their home in Houston County, Alabama.  The mortgage was subsequently sold or assigned to AmSouth which hired Dovenmuehle to service it. In November 2002, Dovenmuehle entered into an agreement with Geotrac, a flood-zone determination provider to identify secured real estate in special flood hazard areas as required under the National Flood Insurance Act ("NFIA"), 42 U.S.C. § 4001 et seq.  When Geotrac compared FEMA maps with the Houston County tax maps it discovered that a structure located on the Clarks' property was in a flood zone.  As a result, in June 2003, AmSouth and

4

Dovenmuehle required the Clarks to purchase flood insurance.

Although the Clarks did not believe that their home was in a flood zone, they sought flood coverage from ALFA Insurance Company. However, the ALFA agent informed them that they had to have additional documentation concerning the flood level threat in order to purchase it. Because AmSouth and Dovenmuehle did not provide them with the necessary documentation, they were unable to obtain flood insurance, even after receiving several notices from AmSouth and Dovenmuehle.

After receiving a second evaluation from Geotrac confirming that the Clarks' property was in a flood zone, AmSouth and Dovenmuehle themselves purchased flood insurance for the Clarks' property, passing on the cost of the insurance to the Clarks by increasing their mortgage payment to reflect the cost of the flood insurance premium. The Clarks, however, refused to pay the increased amount and continued to submit their previous mortgage payment.

In December 2003, Geotrac provided AmSouth and Dovenmuehle with a third flood evaluation in which it again confirmed that the Clarks' home was in a flood zone. The Clarks, however, continued to be delinquent with their full payments and their loan went into default.

Upon learning that Geotrac provided the flood-zone determination to AmSouth and Dovenmuehle, Mr. Clark contacted Geotrac to ask why his property had been listed as being in a flood zone. Mr. Clark immediately recognized that there had been an error in the comparison between the FEMA and Houston County maps. He advised Geotrac of the error, and Geotrac issued a corrected determination.

AmSouth and Dovenmuehle removed the requirement for flood insurance from the Clarks' property, credited the Clarks' account for the amounts advanced for purchase of flood insurance ($ 808.00), and waived all late fees and charges charged to the Clarks ($ 315.40). AmSouth and Dovenmuehle also contacted the major credit reporting agencies to request that they correct any negative reporting on the Clarks' account resulting from the error.

6

AmSouth and Dovenmuehle later discovered that $ 10.25 in property-inspection fees had been overlooked in the refund and crediting process, and they credited the Clarks' mortgage account for these fees as well.

### III. DISCUSSION

#### A. Claims against AmSouth and Dovenmuehle

AmSouth and Dovenmuehle contend that the Clarks' federal and state-law claims, which are all asserted against them, are barred by the NFIA. The court agrees.

The NFIA requires regulated lenders of mortgage real-estate loans to determine if the borrower's property is located in a special flood-hazard area and, if so, to notify the borrower that he or she must obtain an appropriate amount of flood insurance. 42 U.S.C. § 4012a(e)(1). If a borrower fails to purchase the required insurance within 45 days after notification, "the lender or servicer for the loan shall purchase the insurance on behalf of the borrower and may charge the borrower for the cost of premiums and fees incurred by the

lender or servicer for the loan in purchasing the insurance." § 4012a (e)(2).

Lending institutions may delegate the acquisition of information needed to complete a flood-hazard determination to a third-party if the third party "guarantees the accuracy of the information" provided. 42 U.S.C. § 4014b(d). Additionally, lending institutions "may rely on a previous determination of whether the building or mobile home is located in an area having special flood hazards (and shall not be liable for any error in such previous determination), if the previous determination was made not more than 7 years before the date of the transaction." § 4104b(e).

Here, in its capacity as loan servicer for AmSouth, Dovenmuehle hired Geotrac, a third-party hazard-determination company, to monitor the flood-hazard status of buildings secured by loans held by AmSouth. In accordance with the NFIA, the service agreement required Geotrac to provide "guarantees for accuracy" on all of its determinations. 42 U.S.C. § 4014b(d). In turn, Geotrac

8

guaranteed each of its three evaluations indicating that the Clarks' home was located in a special flood-hazard area, and AmSouth and Dovenmuehle then demanded that the Clarks obtain flood insurance coverage.

The United States Supreme Court has made clear that a court must "begin with the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself." Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980). "Absent a clearly expressed legislative intention to the contrary," the Court continued, "that language must ordinarily be regarded as conclusive." Id. Here, the plain language of § 4014b(d) in the NFIA authorizes lending institutions to use third-party determination companies, as AmSouth and Dovenmuehle did, and § 4104d(e) in the statute releases them from liability. Therefore, "[a]bsent a clearly expressed legislative intention to the contrary," Consumer Prod. Safety Comm'n, 447 U.S. at 108, such companies are shielded from liability.

9

This court has found nothing in the NFIA to undermine the express language of § 4014b(d) and § 4104d(e). The Clarks' claims, both federal and state, against AmSouth and Dovenmuehle are therefore barred.

## B. Claims against Geotrac

Geotrac contends that it is also shielded by § 4014b(d) and § 4104d(e). The Clarks have conceded that summary judgment should be entered in favor of Geotrac on the federal claims and on the state-law claims for conversion and unjust-enrichment. Thus, the only claims against Geotrac at issue are the Clarks' state-law claims for breach of contract, negligence, breach of duty to third-party beneficiary, and fraud.

There is absolutely nothing in the language of § 4014b(d) and § 4104d(e) providing for immunity to third-parties, such as Geotrac, from state-law claims. However, this is not the end of the court's inquiry, for, while federal law may not prevent a state court from recognizing state-law claims where there has been a violation of a

10

federal statute, there is still the question whether the state court will itself recognize such claims and, if so, there is also question whether the claims are preempted by federal law.   See, e.g., Tectonics, Inc. of Florida v. Castle Const. Co., 753 F.2d 957, 964 (11th Cir. 1985) ("A state court is 'free to look to the provisions of a federal statute for guidance in applying its longstanding common-law remedies' unless Congress has prohibited the state from looking to the statute's provisions as a standard in determining whether there has been a common-law breach of duty.'") (quoting Hofbauer v. Northwestern National Bank of Rochester, Minnesota, 700 F.2d 1197, 1201 (8th Cir. 1983)); Tectonics, Inc. v. Castle Construction Co., 496 So.2d 704 (Ala. 1986) (refusing to confer state cause of action based on federal law).

The Alabama courts have yet to address whether they would recognize state-law claims for breach of contract, negligence, breach of duty to third-party beneficiary, and fraud in the circumstances presented here.  Because this question is unsettled under Alabama state law and because

11

summary judgment has been entered in favor of all defendants on the federal claims, which were the basis for removal, this court believes that the best course is to remand these remaining, unresolved state-law claims back to state court for resolution, pursuant to 28 U.S.C. § 1367(c)(3).  See L.S.T., Inc. v. Crow, 49 F.3d 679, 685 (11th Cir. 1995) (per curiam).

An appropriate judgment will be entered.

DONE this the 3rd day of January, 2007.


    /s/ Myron H. Thompson
    UNITED STATES DISTRICT JUDGE